## STROEHMANN et al. *v.* MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.

No. 599.   Argued March 11, 1937.—Decided March 29,. 1937.

*Mr. George H. Hafer,* with whom *Messrs. George Ross Hull* and *Carl B. Shelley* were on the brief, for petitioners.

*Mr. Wm. Marshall Bullitt,* with whom *Messrs. Frederick L. Allen* and *Reese H. Harris* were on the brief, for respondent.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

By a policy dated June 30, 1930, respondent Insurance Company, a New York corporation, agreed to pay the

named beneficiary $40,000.00 upon death of Carl F. Stroehmann, the insured. Or to pay $80,000.00 if his death results from accidental bodily injury, "all upon the conditions set forth in Section 1." "And if the Insured is totally and presumably permanently disabled before age 60, will pay to the Insured $400.00 monthly during such disability, increasing after five and ten years continuous disability, besides waiving premium payments, all upon the conditions set forth in Section 3."

The policy is a long and complicated document. It incorporates the application and the Medical Examiner's report.

Section 1 (two printed pages) relates to the "Double Indemnity" obligation. It defines the injury to which the insurance applies, specifies the necessary proof, optional modes of settlement, etc.

Section 3—"Benefits in Event of Total and Permanent Disability before Age 60," is in the margin.[1]  It defines

---

[1] "Section 3.—Benefits in Event of Total and Permanent Disability before Age 60.

"Total Disability.—Disability shall be considered total when there is any impairment of mind or body which continuously renders it impossible for the Insured to follow a gainful occupation.

"Permanent Disability.—Total disability shall, during its continuance, be presumed to be permanent;

"(a) If such disability is the result of conditions which render it reasonably certain that such disability will continue during the remaining lifetime of the Insured; or,

"(b) If such disability has existed continuously for ninety days.

"When Benefits become Effective.—If, before attaining the age of sixty years and while no premium on this Policy is in default, the Insured shall furnish to the Company due proof that he is totally and permanently disabled, as defined above, the Company will grant the following benefits during the remaining lifetime of the Insured so long as such disability continues.

"Benefits. (a) Increasing Income.—The Company will pay a monthly income to the Insured of the amount stated on the first page hereof ($10 per $1,000 face amount of Policy), beginning

total and permanent disability; states when benefits will
become effective; what they shall be; when premiums
will be waived. Also specifies what will be considered
permanent disability, when proofs may be demanded, etc.

upon receipt of due proof of such disability and increasing after
sixty consecutive monthly payments have been made to one and one-
half times such amount and after sixty further consecutive monthly
payments have been made to twice such amount at which it shall
remain while total and permanent disability continues.

"(b) Waiver of Premium.—The Company will also, after receipt
of such due proof, waive payment of each premium as it thereafter
becomes due during such disability.

"Specified Disabilities.—The entire and irrecoverable loss of the
sight of both eyes, or of the use of both hands or both feet or one
hand and one foot, will be considered total and permanent disability.

"General Provisions.—The Company may, before making any in-
come payment or waiving any premium, require due proof of the
continuance of total and permanent disability, but such proof shall
not be required oftener than once a year after such disability has
continued for two years. If such proof is not furnished on demand
or if it shall appear to the Company that the Insured is no longer
totally and permanently disabled, no further income payments will
be made or premiums waived.

"Neither the dividends nor the amount payable in any settlement
hereof shall be decreased because of Disability Benefits granted.

"If the Insured shall at any time so recover that the payment of
Disability Benefits terminates and later shall furnish due proof that
he has again become totally and permanently disabled, Disability
Benefits shall be the same in amount and subject to the same con-
ditions as if no prior disability had existed.

"If the disability of the Insured shall be the result of insanity, in-
come payments shall be payable to the beneficiary, if any, instead
of to the Insured.

"Any disability income payment which may become payable and
which is unpaid at the death of the Insured shall be paid to the
beneficiary.

"Disability Benefits shall not be granted if disability is the result
of self-inflicted injury.

"The provision for Disability Benefits shall automatically termi-
nate if the Insured shall at any time, voluntarily or involuntarily,

And provides: "Disability Benefits shall not be granted if disability is the result of self-inflicted injury. The provision for Disability Benefits shall automatically terminate if the Insured shall at any time, voluntarily or involuntarily engage in military or naval service in time of war outside of the continental limits of the United States of America and the Dominion of Canada." Other provisions relate to termination of such benefits, reduction of premiums thereafter, etc.

Neither § 1 nor § 3 contains anything relative to fraud in obtaining the policy or the effect of false statements in the application.

Section 14—"Miscellaneous Provisions" (two pages) contains the following paragraph: "Incontestability.— Except for non-payment of premiums and except for the restrictions and provisions applying to the Double Indemnity and Disability Benefits as provided in Sections 1 and 3 respectively, this Policy shall be incontestable after one year from its date of issue unless the Insured dies in such year, in which event it shall be incontestable after two years from its date of issue."

In October, 1932, respondent filed a bill (afterwards amended) against Stroehmann, the insured, and the beneficiary in the United States District Court, Middle District, Pennsylvania. It alleged that the policy had been obtained upon false and fraudulent misrepresentations and concealments material to the risk. It asked

engage in military or naval service in time of war outside of the continental limits of the United States of America and the Dominion of Canada.

"If requested in writing by the Insured, the Company will terminate the provision for Disability benefits by endorsement on this Policy.

"If the Insured attains the age of sixty years or if the provision for Disability Benefits terminates, the premiums payable after such age or such termination shall be reduced by the premium for such benefits."

that the Disability Benefits provisions be cancelled, also for an injunction against suit at law upon them.

Relying upon the Incontestability clause the petitioner moved that the bill be dismissed. The trial court sustained the motion, holding that as more than a year had elapsed since the policy took effect the limitation was applicable and controlling. The Circuit Court of Appeals thought otherwise and reversed the challenged decree.

The matter is here by certiorari limited to the question of the application and effect of the Incontestability clause.

No reason appears to doubt the power of the insurer to except from the ordinary Incontestability clause all policy provisions relating to Disability Benefits. Ch. 28, Laws N. Y. (1923); *Steinberg* v. *N. Y. Life Ins. Co.,* 263 N. Y. 45; 188 N. E. 152. But the petitioner maintains that the words used in the policy before us are inadequate definitely to disclose a purpose so to do. And we think the point is well taken.

In *Mutual Life Insurance Co.* v. *Hurni Packing Co.,* 263 U. S. 167, 174, this Court said: "The rule is settled that in case of ambiguity that construction of the policy will be adopted which is most favorable to the insured. The language employed is that of the company and it is consistent with both reason and justice that any fair doubt as to the meaning of its own words should be resolved against it." See *Royal Insurance Co.* v. *Martin,* 192 U. S. 149, 162, 165; *Bergholm* v. *Peoria Life Ins. Co.,* 284 U. S. 489, 492.

Examination of the words relied upon to show an exception to the Incontestability clause of the policy discloses ample cause for doubt concerning their meaning. The arguments of counsel have emphasized the uncertainty. The District Court and the Circuit Court of Appeals reached different conclusions, and elsewhere there is diversity of opinion.

440

The District Court accepted the view approved in *Ness* v. *Mutual Life Ins. Co.* (Fourth Circuit), 70 F. (2d) 59, and *Mutual Life Ins. Co.* v. *Markowitz,* (Ninth Cir- cuit), 78 F. (2d) 396, which presented for interpreta- tion language identical with that now before us. The Circuit Court of Appeals followed its earlier opinion in *N. Y. Life Ins. Co.* v. *Gatti,* (Oct. 6, 1936), where the company employed different language. Certain life com- panies undertake to make exceptions to the Incontesta- bility clause by words more precise than those now under consideration, and opinions in cases arising upon their policies must be appraised accordingly.

·Without difficulty respondent could have expressed in plain words the exception for which it now contends. It has failed, we think, so to do. And applying the settled rule, the insured is entitled to the benefit of the resulting doubt.

The decree of the Circuit Court of Appeals must be reversed. The decree of the District Court is affirmed.

*Reversed.*