## AIRD et al. v. ÆTNA LIFE INS. CO.
### No. 2086.

District Court, W. D. Texas, San Antonio Division.

March 6, 1939.

George Cannon and Charles W. Trueheart, both of San Antonio, Tex., for plaintiffs.

Boyle, Wheeler, Gresham & Terrell, of San Antonio, Tex., for defendant.

McMILLAN, District Judge.

In this case, both parties move for judgment after verdict. Plaintiffs sue on a policy which contains a double indemnity clause insuring the assured against injury, among other things, "by collapse of the outer walls or burning of a building if the insured is therein at the time of the collapse or commencement of the fire". The Insurance Company defends upon two grounds, first, that the insured's death was not caused by burning but was the result of an explosion; second, that if it was the result of burning, the trailer in which he was at the time of the accident did not constitute a building within the purview of the policy.

The question as to whether his death was the result of burns or explosion was submitted as one of fact to the jury, on a charge to which neither party took any exception. The jury found for the plaintiffs and there is ample evidence to sustain their finding. That issue, accordingly, is out of the case. The sole question, there-

fore, remains as to whether the deceased was in a building, as that term is used in the policy, at the time of the commencement of the fire which took his life.

There is no conflict in the facts with regard to this trailer. The parties agreed in open court at the time of the submission of the case to the jury that the question was one of law. If the trailer was a building within the purview of the policy, plaintiffs are entitled to judgment on the verdict. If it was not such a building, then the verdict avails plaintiffs nothing and judgment should be entered for the defendant notwithstanding the verdict.

■ The case has been thoroughly briefed by counsel. No cases directly in point have been found by either party or by the Court. It is unnecessary to detail the facts except incidentally, for the reason that they are undisputed and the parties can very easily prepare findings of fact from the record. Owing to the lack of authority, the question is not at all free from difficulty. The Court should, of course, attempt to construe the contract in accordance with the intent of the parties. That, of course, means not only the intent of the Insurance Company but the understanding and intent of the insured.

The question to be determined is what did this trailer constitute, not at the time of its purchase, not at the times when it might have been traveling up and down the road, but at the time the accident actually happened. The evidence shows that it was a modern, streamlined trailer, mounted on two wheels. It had no motive power of its own and was dependent for locomotion upon vehicles having power. It was well equipped as a place in which to live. It had beds, bath, toilet, cooking facilities, etc. It had, of course, side walls, a roof, floor and cross walls which subdivided it into parts. At the time when the accident happened, it had been detached from the automobile which had pulled it to the place and had been raised off of its wheels by large heavy jacks. While in that position it was not capable of moving, though it could be taken off of the jacks and again put in position to be pulled by about fifteen minutes work. Electric light connections were established and steps were placed by the door to admit of ingress and egress. The deceased was an oil operator and had a lease at this place which he was engaged in developing. There was a well in the actual process of being drilled and more

were contemplated. He had brought the trailer to the lease for the purpose of living in it during the course of the development. The uncontradicted evidence shows that it was contemplated that it would remain there for a considerable period of time or at least during the development of the lease. It had been so located there for about a week.

■ As said by the Supreme Court, substantially, in Aschenbrenner v. U. S. Fid. & G. Co., 292 U.S. 80, 54 S.Ct. 590, 78 L. Ed. 1137, the phraseology of contracts of insurance is that chosen by the insurer and so if the language is reasonably open to two constructions, that most favorable to the insured will be adopted. On the other hand, as said by that same court in Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416, the rule furnishes no warrant for forcing from plain words unusual or unnatural meanings. However, it is well settled that if the word used is commonly susceptible of two or more meanings or is ambiguous in its general import, then its more extended application may be given in order to procure a construction favorable to the insured. Stroehmann v. Mutual Life Ins. Co., 300 U.S. 435, 57 S.Ct. 607, 81 L.Ed. 732; Stipcich v. Metropolitan Life Insurance Company, 277 U.S. 311, 48 S.Ct. 512, 72 L.Ed. 895; Great Eastern Casualty Company v. Blackwelder, 21 Ga.App. 586, 94 S.E. 843, 845.

■ The word "building" has been variously defined. It is unnecessary to set these definitions out here. Many of them have been quoted to the court in the brief for plaintiffs. As said in Corpus Juris Secundum, Volume 12, at page 378, the term is comprehensive, generic and, in its use, may be ambiguous, having no universal inflexible meaning which will apply to all cases. And further "while usually the term indicates some sort of edifice or structure located on or affixed to land, it does not necessarily imply that it is fixed to the soil." Dozens of instances are given in this work of structures or objects which were held to be buildings, some of them being located upon wagons, others upon automobile chassis, others upon boats moored to the bank. It is manifest from the reading not only of the authorities but from the various dictionary definitions that the word "building", standing alone, has no definite, fixed positive meaning which can be compressed into any narrow limit,

thereby eliminating any and all other concepts. 'Of course, no strange or unnatural definition should be given to the word in construing contracts of this character, but if the word is broad enough to cover this trailer in which the insured suffered his fatal injury, then the matter should be resolved in the plaintiffs' favor. In the Blackwelder case, the Court, in part, says: "It is clear, however, that the answer to the question involved in this case depends upon another question, to wit, Is the word 'building' ambiguous? Has it only one generally accepted and understood meaning, or has it more than one? To state the proposition more precisely, as applied to the facts of this case, does the word 'building' include only houses of a certain class, such as dwellings, stores, offices, barns, and structures of the same general character, or is it susceptible, without a violent interpretation, of being construed as including many kinds of edifices and structures erected by man, which are not of the same general character as dwellings, stores, offices, or barns? It appears from the definitions we have just quoted from the dictionaries that the word 'building' embraces edifices and structures of many and varied character, for occupation, habitation, storage of goods, shelter, and for other useful purposes. There seems to be no single, restricted and well-accepted definition of the term. The books are, however, full of cases which supply the answer to the latter question."

It must be borne in mind always, as said earlier in this memorandum, that the time for the consideration as to whether this trailer constituted a building or not was the time of the accident. Undoubtedly when it was resting upon its wheels and attached to an automobile and proceeding along the highways of the State, it could not by any stretch of the imagination be conceived to be a building. However, it is entirely conceivable that it might be one thing at one time and another at another time. At the time when this accident happened, it was undeniably more or less permanently located at this oil lease. It had been deprived of all means of locomotion, not only by detachment from its motor car but by reason of the fact that it had been lifted off of its wheels. Unlike a box car or a railroad coach, it did not rest on steel rails. It was serving all the purposes of a house. It had a roof, side walls, floor, cross walls and furnishings. Deceased had been and was using it as a place in which to live, eat and sleep. There was nothing to prevent its staying right where it was as long as he chose to keep it there. The question as to its permanency or semi-permanency, while entitled to consideration, should not be completely controlling. Buildings are frequently moved. The material of which it was constructed does not finally determine the question. The authorities settle that. Under the facts, it undoubtedly falls within the scope of many of the definitions of a building. Such being the case, any question about the matter should, under the authorities, be resolved in favor of the plaintiffs.

■ The highway statutes relied on by defendant had no application to this trailer, save when it was on the streets or highways of the State. When stored or parked on private property, it was not subject to their provisions. Atkins v. State Highway Department, Tex.Civ.App., 201 S.W. 226; Article 807, Penal Code of Texas.

We have no way in this case to gather the intent of the parties save by the wording of the contract. The contract being reasonably susceptible of a construction that would cover this trailer under the circumstances existing at the time of the fire, the Court should not put a narrower or more restricted construction upon it. The policy was drawn and offered by the Company. Had it intended a building to be restricted to structures standing upon permanent foundations and actually affixed to the soil, it could have very easily said so. Having failed to so limit its undertaking, it must accept the consequences of its engagement.

Plaintiffs' motion for judgment will be granted.