JOHN A. ISOM and F. H. ISOM v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES

189 So. 253
Division A
Opinion Filed May 23, 1939

*Davis & Davis,* for Appellants;;

*Adair, Cooper & Capp, H. P. Osborne* and *J. Henson Markham,* for Appellee.

BUFORD, J.—Appeal brings for review final decree in favor of complainant in the Circuit Court, appellee here, in a suit in Chancery wherein complainant sought,

"1. That this Honorable Court take and retain jurisdiction of this cause and of the matters and things herein alleged and of the parties hereto and administer complete relief herein between the parties hereto.

"2. That this Court temporarily restrain and enjoin said defendant John A. Isom from prosecuting or maintaining any further that certain cause brought by said defendant John A. Isom against said plaintiff and now pending in the

'Circuit Court in and for 'Columbia County,: Florida, and from instituting or causing to be instituted any action at law or any suit in equity in 'any ·state or 'other court to 'collect any sums claimed to be due as disability benefits under said policy of insurance, and that upon final hearing in this, cause, such injunction be made permanent.

"3. That the total and permanent disability provisions and, the provisions for double indemnity in case of death by accident contained in said policy No. 4,843,137 be declared and decreed to be and to have been at all times' null, void and of no effect, and that said total and permanent disability and double indemnity provisions contained in said policy be rescinded, cancelled and set aside, and the same declared to have been and to be duly rescinded, cancelled and set aside and that said policy of insurance be reformed in such manner and' to such an extent as to strike out, cancel and eliminate therefrom the said total and permanent disability and double indemnity provisions thereof as aforesaid.

"4. That said defendant John A. Isom be ordered and decreed to pay to the plaintiff the sum of Fifty ($50.00) Dollars heretofore allowed and paid to him by the plaintiff for disability benefits, together with interest thereon from the date such sum was paid.

"5. That the plaintiff may have such other and further or other or further relief in the premises as' equity and good conscience may require and to your Honors may seem meet and proper."

The bill of complaint alleged in effect: That on August 28, 1928, defendant, John A. Isom, applied to the plaintiff for the issuance of an insurance policy upon his life, which policy should contain provisions relating to disability and double indemnity. That plaintiff was then, and has con-

tinued to be, engeged in the business of writing policies of insurance, insuring lives of such individuals as applied therefor and who were, after examination, accepted by the plaintiff. That the application of Isom was in writing and consisted of parts One and Two.

"That in and by Part I of said application dated August 28th, 1928, defendant John A. Isom agreed that the policy issued thereon should not take effect until the first premium therefor had been paid during his good health and that all the answers contained in said application, and all those made to the plaintiff's medical examiner, which are contained in Part II of said application were true and were offered to the plaintiff as an inducement to plaintiff to issue the policy for which application was thereby made;

"That on, to-wit: August 28, 1928, said defendant John A. Isom appeared before a medical examiner of the plaintiff and answered certain questions relative to his physical condition and past medical history. Such questions and answers were and are contained in Part II of said application under the caption 'Statements to Medical Examiner.' That among the questions or statements propounded to said defendant John A. Isom and the answers or statements then and there so made by him to said examiner and contained in said Part II of said application were the following:

" '3. Have you, on account of your health, ever left your work for more than one month or changed your occupation or dwelling or traveled? (Details and dates.)'—to which said John A. Isom answered 'No.'

" '6. A. State every physician or practitioner whom you have consulted or who has treated you during the past five years. (If none, so state.)'

"To which said John A. Isom answered:

| "Name and address of each | Date & details | Result |
|---|---|---|
| " 'L. J. Arnold, Lake City, Fla. | Feb. 1925. Treated for Bronchial Asthma | Recovery No attack in 2 years. |

" '7. Have you ever had or been treated for any disease or disturbance of: (Answer each separately.)

"A. The Brain or Nerves.' To which said John A. Isom answered 'No.'

" 'B. The Rectum (Hemorrhoids or Piles).' To which said John A. Isom answered 'No.'

"8. A. Have you ever had gout, rheumatism, tuberculosis, epilepsy, diabetes or syphilis?' To which said John A. Isom answered 'No.'

" 'F. Have you had any other illness or injury not mentioned above? To which said John A. Isom answered 'No.'

" '9.

" 'C. Have you ever taken treatment for the alcoholic or drug habit or been a patient in an institution or hospital? To which said John A. Isom answered: 'No, except for operation as stated in 8D and 6A.' (Such statement in said 8D was that said John A. Isom had a surgical operation for removal of his appendix in 1922 after one attack and with complete recovery)."

That the answers, statements and representations contained in the application, and each of them was material to the risk against which the defendant Isom was then and there applying to the plaintiff for insurance policy containing provisions relating to disability and double indemnity and benefits of each of them was material to the subject matter of such insurance and that each of them was made by Isom to the plaintiff for the purpose of inducing

the plaintiff to enter into and issue such a contract of insurance.

That plaintiff, relying upon the statements and representations so made by the defendant Isom, issued and delivered to the said Isom on about September 7, 1928, its policy of insurance numbered 4,843,137, and included in such contract or policy of insurance special agreements or provisions relating to total and permanent disability and double indemnity for death by accident. Said contract or policy of insurance was accepted by the defendant, Isom.

That the written application of Isom containing said statements and representations, *supra,* was, by the terms of the policy, made a part of the contract of insurance and a copy of such written application was attached to the policy and made a part thereof.

"That it was provided in and by said policy of insurance No. 4,843,137, as follows, to-wit:

" 'INCONTESTIBILITY AND FREEDOM OF TRAVEL, RESIDENCE AND OCCUPATION.

"This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) INCONTESTIBLE after it has been in force during the lifetime of the insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) FREE FROM RESTRICTIONS on travel, residence, occupation or military or naval service.'

"VI. That said policy or contract of insurance on the life of said John A. Isom was, in and by its provisions, payable to the insured's brother, F. H. Isom, one of the defendants herein, as beneficiary, with the right of the insured to change the beneficiary or assign said policy. That said insured has not changed said beneficiary or assigned said policy. That plaintiff is informed and believes and

and upon such information and belief alleges that such policy, designating the beneficiary as aforesaid, is now in the hands of the defendant, John A. Isom.

"VII. That such statements and representations by the defendant John A. Isom as set forth in paragraph 1 of this bill of complaint and relied upon by the plaintiff as aforesaid ·were, and each of them was, not true in fact, and were, and each of them was, materially and essentially untrue, among other things, in that said John A. Isom did, prior to making application to the plaintiff as aforesaid, leave his work for more than one month, and change his occupation and dwelling and travel, each and every, on account of his. health; and in that said John A. Isom had consulted several physicians and had been treated by several physicians and practitioners during the five years prior to August 28th, 1928, other than Dr. L. J. Arnold, mentioned as the only physician whom the insured had consulted or who had treated the insured in such period of five years and in that said John A. Isom had been treated, among other diseases or disturbances, for the brain and the nerves and rectum; and in that he had had or suffered from rheumatism and tuberculosis; and in that he had had numerous and sundry illnesses and diseases not mentioned or in any way suggested by his said written application; and in that he had been a patient in an institution or hospital for treatment, examina-.tion or observation other than for the removal of his appendix in 1922 and treatment for bronchial asthma in February, 1925; and in that said John A. Isom had suffered from attacks of bronchial asthma after his attack therefrom in February, 1925, and within two years of the date of his application; that such statements and representations were, and each of them was, wilfully false, untrue and fraudulent. And the falsity of such statements and representations severally was unknown to the plaintiff and known to

said defendant John A. Isom, and the facts sought by the plaintiff concerning the physical condition and past medical history of said defendant John A. Isom were by the said defendant John A. Isom concealed from the plaintiff. And such representations and statements so made to the plaintiff were false and known by said defendant John A. Isom to be false and were made for the purpose of deceiving the plaintiff and inducing it to issue the policy of insurance containing the special and separate agreements relating to double indemnity and total and permanent disability benefits, and did deceive and induce the plaintiff to issue such policy embodying such special and separate agreements relating to double indemnity and total and permanent disability benefits, which said policy with such special and separate agreements would not have been issued by the plaintiff had it known said facts so concealed as aforesaid, and that said statements and representations were false and untrue.

"That the first premium on said policy of insurance was not paid during the good health of the defendant John A. Isom and by reason thereof and pursuant to the written application of said defendant as aforesaid, said policy embodying special and separate agreements relating to double indemnity and disability benefits did not take effect.

"VIII. That on or about the month of April, 1932, the defendant John A. Isom claimed and demanded that, pursuant to said policy provisions relating to disability benefits, the plaintiff paid him benefits in the sum of Fifty Dollars ($50.00) per month for disability beginning with the month of April, 1932, and pursuant to such demand the plaintiff in September, 1932, paid to said defendant John A. Isom benefits in the sum of Fifty Dollars ($50.00). That such payment of Fifty Dollars ($50.00) was made by the plaintiff

to the defendant John A. Isom pursuant to his claim and demand and in reliance upon the false and fraudulent statements and representations contained in the application for said insurance policy as aforesaid, and said payment was made by the plaintiff in the belief that said policy of insurance, including the special and separate agreements and provisions aforesaid, had been fairly and honestly applied for and obtained by the defendant John A. Isom. That defendant John A. Isom claims and demands that pursuant to the provisions of said policy relating to said disability benefits plaintiff should pay him disability benefits in the aggregate sum of Fifty Dollars ($50.00) per month from April 1, 1932, and said defendant John A. Isom has filed his action at law against this plaintiff in the Circuit Court in and for Columbia County, Florida, seeking to collect and enforce payment to him by the plaintiff of his cliams for disability benefits under said policy from and after April 1st, 1932.

"That said defendant John A. Isom is asserting and claiming that said policy of insurance embodying special and separate agreements relative to double indemnity and disability benefits, is a valid and subsisting contract, and that the plaintiff is liable for double the face amount of said policy less any amounts due the plaintiff by reason of any loans upon the said policy, in the event of the death of said defendant John A. Isom from accident in accordance with the double indemnity provisions contained in said policy. That the defendant John A. Isom will further prosecute and maintain his said action pending as aforesaid in the Circuit Court of Columbia County, Florida, to collect disability benefits as sought in such action under the special provisions in said policy and will institute other proceedings and suits for the enforcement and collection of disability benefits

claimed by him to be due since the institution of his said action in said Circuit Court unless restrained and enjoined from so doing."

"That plaintiff, immediately upon learning of the fraud and falsity of the material statements and representations made by defendant Isom which resulted in the issuance of the policy, elected to rescind and cancel the total and permanent disability provisions and the provisions for double indemnity, in case of death by accident, contained in the policy, and thereafter notified Isom of its election so to rescind and cancel such provisions, and that the said disability and double indemnity provisions are not and never were binding upon the plaintiff; and then and there tendered to the defendant Isom the full amount of the premium paid by Isom to the plaintiff for and on account of such provisions in said policy, together with interest, and the full amount of the adjustment of dividends made upon such rescission, together with interest, and then and there demanded the surrender of said policy for the cancellation of such disability and double indemnity provisions and also demanded the repayment to it of the disability benefits theretofore allowed and paid by plaintiff to the defendant. That the defendant Isom refused to accept the amount so tendered, refused to surrender the policy for cancellation of the special provisions, *supra,* and refused to repay the plaintiff the disability benefits in the amount of $50.00, or any portion thereof, theretofore paid by the plaintiff to the defendant.

"That the plaintiff now is and ever since the discovery of said false statements and representations has been ready, able and willing to return the full amount of the premiums paid by the defendant John A. Isom to the plaintiff for and on account of said special provisions in said policy, together

with interest thereon, and the full amount of the adjustment of dividends made upon such recission, together with interest, and here and now continuously offers the same and prays this Court to permit it to pay said money into the registry of this Court to be held to await the event of this cause and then to be paid over to such person or persons as this Court may direct, upon the surrender and cancellation of the aforesaid provisions of said policy of insurance; and the plaintiff offers to do such equity as to this Court shall seem just and right.

"XI. And plaintiff further alleges that the plaintiff has established, set aside and created a reserve as required against possible liability of and under the separate or special agreements or provisions providing for disability benefits as aforesaid in an amount more than Three Thousand Dollars ($3,000.00) in excess of the reserve required upon and after the cancellation of such agreements or provisions for disability benefits, and will be required to maintain and will maintain such reserve in an amount exceeding Three Thousand Dollars ($3,000.00) until such agreements or provisions are duly rescinded and cancelled, or until the disability of said John A. Isom has been terminated by death or otherwise."

The defendants answered, alleging in effect: Paragraph 1 of the bill of complaint was admitted. Paragraph 2 was as follows:

"Answering paragraph two of the bill of complaint these defendants deny that the answers, statements and representations contained in paragraph two were each material to the risk on the part of the plaintiff in issuing the policy of insurance and/or double indemnity disability contained in said policy; further deny each and every of said questions were material to the subject matter of said insurance. These defendants admit that the said John A. Isom made

each of said answers to the plaintiff herein, and that each of said answers were and are true, and correct in point of fact."

Paragraphs 3, 4, 5 and 6 were admitted.

Paragraphs 7, 8 and 9 of the answer were: .

"Answering paragraph seven of the bill of complaint these answering defendants deny that the answers as made by the said John A. Isom were and each of them were not true in fact, and deny that each and every of said questions and answers are material and essentially true, and deny that the said John A. Isom prior to applying to the plaintiff for the said insurance left his said work for more than one month, and denied that the said John A. Isom changed his occupation, dwelling and traveled on account of his said health; deny that the said John A. Isom consulted physicians and was treated by physicians and practitioners during the five years prior to August 28th, 1928; deny that the said John A. Isom was treated by physicians within five years next to and prior to the issuance of the policy of insurance other than Dr. L. J. Arnold; deny that the said John A. Isom was treated among other diseases or disturbrances, for the brain, nerves and rectum; deny that he had suffered from rheumatism or tuberculosis; deny that the said John A.. Isom had numerous and sundry illnesses and diseases other than suggested in said written application; deny that he has been a patient in an institution or hospital for treatment, examination and observation other than for the removal of his appendix in 1922 and treatment of bronchial asthma in February, 1925; deny that the said John A. Isom suffered from an attack of bronchial asthma in February, 1925, and deny that said attack occurred in two years of the date of said application.

"These answering defendants answering further said paragraph seven, deny that said statements and representa-

tions made were wilful, false, untrue and fraudulent; deny that the falsity of said statements and representations severally was known to the said John A. Isom, and upon such allegations these answering defendants require strict and positive proof of the same. Deny that the said John A. Isom concealed from the plaintiff his physical condition or past medical history; deny that his representations and statements made to the plaintiff were false and were by the said John A. Isom known to be false and made for the purpose of deceiving the plaintiff; deny that said John A. Isom directly or indirectly by deceit fraud or covin, induced the said plaintiff to issue the policy of insurance described therein containing all the conditions and provisions thereof, and deny that the said John A. Isom concealed facts, conditions or diseases which he then and there had at the time of said examination, but such answers as were made were made honestly and in good faith to the very best of his knowledge and information, and if the said John A. Isom had or possessed any of the diseases named, enumerated or set forth the said facts were unknown to the said John A. Isom. Answering further paragraph seven of the bill of complaint, this defendant states that he paid premiums which were demanded on the part of the plaintiff, and paid them promptly when requested, and that the plaintiff had a full, complete and accurate knowledge of the health of the said John A. Isom and this fact was determined by the examining physicians of said plaintiff and after the examination thereof the physicians of said plaintiff announced that the said John A. Isom was in good physical condition. That each of said answers were made to the medical examiner were true, accurate and correct in point of fact.

"8. Answering paragraph eight of the bill of complaint these defendants admit that the plaintiff paid to the said John A. Isom $50.00 under the terms of said policy as a

monthly disability, but deny that the said $50.00 was paid by the plaintiff to the defendant John A. Isom upon false and fraudulent statements and representations contained in the application for the policy sued upon herein, and allege the truth to be that the said policy honestly, fairly and according to the rules, conditions and provisions of the plaintiff duly issued to the said John A. Isom.

"This defendant admits that he has instituted in the Circuit Court of Columbia County, Florida, a common law action to recover upon which he seeks to collect monthly disability payments due by the plaintiff to the defendant John A. Isom under the terms of said disability benefits. Admits this is a binding contract between the plaintiff and the said John A. Isom as is alleged and set forth in said bill of complaint. These defendants admit that the said John A. Isom intends to prosecute his said suit in the Circuit Court of Columbia County, Florida, to collect disability benefits under the special provisions of said policy, and to pursue each and every legal right and benefit authorized by law necessary for the collection of all items accruing thereunder.

"9. Answering paragraph nine of the bill of complaint, these defendants deny that the said John A. Isom made false statements on material issues to the plaintiff to issue said policy of insurance described therein, and deny the complainant to this cause has a right to rescind the total and permanent disability provisions and double indemnity provisions of said policy of insurance, and allege that the same is a binding obligation between the parties hereto, and allege that each and every the said provisions of said policy are now in full force and effect binding upon the parties hereto, and that the said John A. Isom has performed each of the provisions, conditions and stipulations required of and by the plaintiff to this cause necessary to carry forward each

and every the terms of said policy of insurance sued upon in this cause."

The questions and answers contained in the application are as stated in the bill of complaint, *supra*.

The policy contained the following clauses: "This insurance is granted in consideration of the payment in advance of One Hundred Ninety-four and 50/100 Dollars, and of the payment annually thereafter of a like sum upon each Twenty-eighth day of August, until Twenty full years' premiums shall have been paid, or until the prior death of the insured. These payments include an annual premium of $7.35 for the Double Indemnity and of $10.05 for the total and Permanent Disability provision hereof.

"The provisions of the subsequent pages hereof form a part of this contract as fully as if recited at length over the signatures hereto affixed. This policy is executed at the Home Office of the Society in New York on its date of issue, the Seventh day of September, 1928."

"INCONTESTIBILITY AND FREEDOM OF TRAVEL,
RESIDENCE AND OCCUPATION.

"This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (a) incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue, provided premiums have been duly paid, and (b) FREE FROM RESTRICTIONS on travel, residence, occupation or military or naval service."

The controlling question is whether or not the disability provision of the policy was contestable because of false representations made in the application after a period of one year from the date of the policy when all premiums had been paid.

The contract had three phases, (1) straight insurance

for $5,000.00, (2) double indemnity in case of death by accident, (3) to pay monthly installments in event of disability. The portion of premium applicable to each was set out in the policy. It is elementary that fraud in its procurement is ground for recission and cancellation of any contract, unless for consideration or expediency the parties agree that the contract may not be cancelled or rescinded for such cause. Therefore, by special provisions of a contract it may be made incontestable on account of fraud or for any other reason.

We have carefully considered the "incontestability" clause of the involved policy and find in it no ambiguity or uncertainty. The language, *supra*, clearly states that "this policy except as to the provisions relating to disability and double indemnity, shall be incontestable after" etc. * * *, which clearly means that the policy as to the provisions of disability and double indemnity shall be and remain contestable for cause.

In determining cases of this sort there are two vital matters and conditions to be given controlling weight, (a) whether or not the incontestibility clause excepts from its purview all or to a limited extent only the disability and double indemnity provisions of the policy; (b) whether or not the contract of insurance is so framed as to express a complete and effective contract as to each form of insurance, that is, whether or not there is set up in the policy or contract a designation of the portion of the premium which is applied to the payment of the consideration for which each separate phase of the insurer's liability and obligation is assumed.

Under the terms of the instant contract the entire provisions of the contract in regard to insurance against disability and as to double indemnity are excepted from the operation of incontestability clause and the policy clearly

states the amount or portion of the premium which is taken and accepted in consideration of each phase or insurance. In this connection see Annotation, 91 A. L. R. 1470, *et seq.* See also 91 A. L. R. 1466.

We, therefore, hold that the contract was, and is divisible and that the contract as to disability benefits and double indemnity was and is subject to rescission and cancellation because of fraud in the procurement of the contract. See Equitable Life Assurance Society v. Deem, 91 Fed. (2) 569, wherein it was held:

"An insurer may except all provisions relating to disability benefits from ordinary incontestibility clause of life policy (Insurance Law N. Y. No. 101 subd. 2)."

"In life policy with disability provisions and incontestability clause, exception from operation of incontestability clause 'as to the provisions relating to disability and double indemnity' applied to all provisions dealing with disability, not merely to conditions on which such provisions became effective, and hence defense of fraudulent representations in application was available to insurer in action for disability benefits."

"Though words 'provisions' and 'conditions' may overlap in meaning in some contexts, as applied to contracts, 'provisions' has the more general and 'conditions' the more particular meaning."

"The 'provisions' of life policy relating to disability benefits include particular 'conditions' on which such benefits become payable, but 'provisions' affirmatively creating insurer's liability are not equivalent to 'conditions' which limit and restrict such liability."

"Though ambiguities in policies must be resolved in favor of insured, courts may not create ambiguity which would not otherwise exist by strained and over-refined construction of ordinary words, and plain and unambiguous wording

must be given its natural meaning, irrespective of diversity of opinion arising over similar but less precise language."

To the same effect will be found Pyramid Life Ins. Co. v. Selkirk, 80 Fed. (2) 553; Smith v. Equitable Life Assurance Society, 169 Tenn. 477, 89 S. W. (2) 165; Guardian Life Ins. Co. of America v. Barry, Ind. Sup., 10 N. E. (2) 614, 617.

In the latter case it was said:

"Appellee contends that the language of the policy is inadequate to definitely disclose a purpose on the part of the company to except all policy provisions relating to disability benefits from the incontestibility clause. He leans heavily upon Ness v. Mutual Life Insurance Co. of New York (C. C. A. 1934), 70 F. (2d) 59, and Stroehmann, *et al.*, v. Mutual Life Insurance Co. of New York (1937), 300 U. S. 435, 57 S. Ct. 607, 609, 81 L. Ed. 732. Those cases involved an incontestability clause as follows: 'Except for non-payment of premiums and except for the restrictions and provisions applying to the double indemnity and disability benefits as provided in Sections 1 and 3, respectively, this policy shall be incontestable after one year from its date of issue.' The Section 1 referred to related to double indemnity, and defines the injury to which the insurance applied, specified necessary proof, and optional modes of settlement. Section 3 defines total and permanent disability and states when benefits shall become effective, what they shall be, and when premiums will be waived. It also specified what shall be considered to be permanent disability, when proofs may be demanded, etc. It is said in the latter case: 'Neither Section 1 nor 3 contains anything relative to fraud in obtaining the policy or the effect of false statements in the application.' The Ness case was decided upon the theory that, by including as excepted from the incontestability clause only Sections 1 and

3 of the policy, a clear intention was indicated to exclude everything else from the exception, and therefore that the policy could only be contested upon some grounds found in Sections 1 and 3 of the policy. It is apparently recognized that the provisions of Section 1 and 3 deal merely with definitions of and limitations upon the coverage or risk, and not with matters which might be involved in a defense which questions the validity of the policy. But it is pointed out that there is some apparent confusion in the authorities as to whether defenses based upon contentions concerning the limitation of coverage or risk are precluded by a contestability clause, and apparently for the purpose of giving some meaning to the exception, it is concluded that since the exception covers nothing but the provisions of Sections 1 and 3, it was inserted as a bar to the construction of the policy which would prevent a contest as to the extent of the coverage. It will be noted that the opinion in the Stroehmann case is put squarely upon the ground that the meaning of the clause is doubtful. This could only be so if the Court doubted the view expressed in the Ness case concerning the purpose for which the clause was inserted. A doubt of that view would seem to concede the possibility that the clause was intended as a reservation of the right to contest the validity of the policy. It is pointed out that some policies undertake to make exceptions by words more precise than those under consideration, and that opinions in cases arising upon such policies must be appraised accordingly. The opinions therefore go no further than to construe the limited exception to incontestability in the policies considered."

This statement of Mr. Chief Justice FANSLER is a clear exposition of the legal grounds for the difference in conclusions reached in the case which he then had under consideration, the cases which we have hereinbefore cited and

the case of Ness v. Mutual Life Insurance Co. of New York, 70 Fed. (2) 59; Strochmann, *et al.*, v. Mutual Life Ins. Co. of New York, 300 U. S. 437, 57 Sup. Ct. 607, 609, 81 L. Ed. 732; and Mutual Life Ins. Co. v. Markowitz, 78 Fed. (2) 396.

Indeed, the only case which we have found or to which our attention has been directed, which is in conflict with the authorities upon which we rely is the case of Kiriakides v. Equitable Life Assurance Society, 174 S. C. 140, 177 S. E. 40.

We are constrained to the conclusion that the Court misconstrued the force and effect of the opinion and judgment in Ness v. Mutual Life Insurance Co. of New York, 70 Fed. (2) 59.

The opinion in the Ness case, *supra,* was written by Circuit Judge Parker in 1934. In 1937 Judge Parker had become a member of the Circuit Court of Appeals of the Fourth Circuit and was a member of that Court when the Court handed down the opinion in the Deem case, *supra,* and, referring to the Ness case, the Court said:

"Counsel for the insured cites a number of prior decisions of this and other courts in claimed support of his contention. But with one exception, Kiriakides v. Equitable Life Assur. Soc., 174 S. C. 140, 177 S. E. 40, they all dealt with differently worded exceptions as to disability in the incontestable clause. The Kiriakides case was based largely on the Ness case (Ness v. Mutual Life Ins. Co. of N. Y., 70 Fed. [2d] 59) in this Court where the wording was quite different. On the other hand, while we have noted no Federal decision interpreting a clause with the same wording used in this case, the courts of Tennessee and Arizona have construed the very same excepted phrase in the policy of the defendant here in accord with the conclusion above reached, and the New York Appellate Division has reached

the same conclusion on practically the same wording in the policy of another company. Smith v. Equitable Life Assur. Soc., 169 Tenn. 477, 89 S. W. (2d) 165 (the latest case with a full review of prior decisions) ; Greber v. Equitable Life Assur. Soc., 43 Ariz. 1, 28 P. (2d) 817; Guardian Life Ins. Co. v. Katz, 243 App. Div. 11, 14, 275 N. Y. S. 743.

"Chief reliance for the insured is placed upon the case of Ness v. Mutual Life Ins. Co. of N. Y., 70 Fed. (2d) 59, in which this Court held the excepting phrase as there worded was not effective to render the incontestable clause inapplicable to disability benefits. The wording of the exception was however quite different from that in the instant case. The phrase there used read: 'Except for non-payment of premiums and except for the *restrictions* and *provisions applying* to the double indemnity and disability benefits as *provided in Sections 1 and 3, respectively,* this policy shall be incontestable.' (Italics supplied.) On comparison, the differences are obvious. In the Ness case the word 'provision' by the context was at least susceptible of a meaning synonymous with 'restrictions' or 'conditions,' the exception was grammatically applicable to the word incontestable (rather than to the 'policy') and the scope of the phrase was further limited specifically to certain portions of the policy and not made applicable to the whole. And Judge Parker, for the Court, clearly points out the distinction in the opinion. It is to be noted that the exception is, not as to the double indemnity and disability benefits, but as to 'restrictions and provisions applying to the double indemnity and disability benefits.' "

And again:

"If it had been the intention of the company that the right to contest liability for double indemnity or disability benefits should not be affected by the incontestability clause, it would have been easy enough to use language making

that intention clear, as by simply wording the second exception to the incontestability clause to read: 'Except as to liability for double indemnity or disability benefits.' "

And again, referring to the case of Greber v. Equitable Life Assur. Soc., *supra,* he pointed. out. that the language there used was very different from that used in the Ness case.

"Following the Ness case and reaching similar conclusions on the identical wording, are the cases of Mutual Life Ins. Co. v. Markowitz, 78 Fed. (2d) 396 (C. C. A. 9) and Mutual Life Ins. Co. v. Margolis, 11 Cal. App. (2d) 382, 53 P. (2d) 1017. In the Third Circuit a contrary conclusion was reached in Mutual Life Ins. Co. v. Stroehmann, 86 Fed. (2d) 47, but the Supreme Court on certiorari reversed and resolved the conflict in favor of the holding in the former cases by adopting the view that the exception so worded was ineffective to exempt the provisions as to disability benefits because the phrase as worded was ambiguous. 300 U. S. 435, 57 S. Ct. 607, 81 L. Ed. 732."

We do not feel that we could more clearly state the grounds for difference in the conclusions reached in the Ness case and in the Deem case then was stated in that opinion.

The second question is stated by the appellant as follows:

"Will a court of equity, after the institution of an action at law to recover a disability claim under a total and permanent disability provision, of a life insurance policy, entertain a bill of the insurer during the pendency of such suit to cancel such provision and enjoin the maintenance of such action at law, and from instituting other actions in the future, where the bill is founded upon charges of fraud in procuring the policy?"

The third and last question is stated by appellant as follows:

"Where there are no other allegations of a bill to give a court of equity jurisdiction, can a money judgment be awarded by such court for an amount alleged to have been paid, by the complainant to defendant as a disability benefit?"

Both questions were answered by the lower court in the affirmative and, we hold, properly so.

We think the legal principle involved here is succinctly stated in Brown, *et al.,* v. Pacific Mutual Life Ins. Co., 62 Fed. (2) 711, in which the Fourth Circuit Court of Appeals held:

"In such cases equity will not enjoin an action at law, if the latter be first commenced, and if the remedy at law be adequate. If the remedy at law be inadequate, however, equity will enjoin the legal proceeding even though commenced first."

Further in the opinion in that case Judge Parker, speaking for the Court, quoted at length from Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 4, 1363, saying, in part:

"If any affirmative equitable relief is necessary to a full settlement of the controversy, and to a complete protection of the defendant's rights, a court of equity will interfere, entertain a suit for such relief, and enjoin the action at law. The scope of this particular doctrine is plainly identical with that which governs the second branch of the exclusive jurisdiction of equity as described in the first volume. Whenever a court of equity exercises its jurisdiction over a case involving only legal interests and primary rights, for the purpose of awarding its exclusive equitable remedies, because the legal remedies would be inadequate, it will always, if necessary, enjoin an action at law which interrupts the full exercise of its jurisdiction."

See also Provident Mutual Life Ins. Co. v. Parsons, 70 Fed. (2) 863.

In Curtis v. Albritton, 101 Fla. 853, 132 So. 677, we held: "The power to stay proceedings at law for the purpose of exercising equitable control over the parties and proceedings, to the end that justice may be promoted, seems to be inherent in courts of general equitable jurisdiction."

It cannot be successfully contended that the insurer had its adequate remedy at law by defending the law action instituted by the insured because that suit only involved the disability feature of the insurance contract and beneficiary under the double indemnity clause of the contract was not a party to that suit.

Therefore, if the insurer could have successfully defended that suit on the ground of fraud the result would not have been *res adjudicata* to a future claim by the beneficiary for double indemnity, should occasion arise to warrant his claim under that feature of the policy.

Aside from all other reasons, this was sufficient to constitute basis for equity jurisdiction, and equity having assumed jurisdiction, it will proceed to settle all rights between the parties growing out of the same transaction.

In the case of Erdmann v. Gregg, 90 N. J. Equity 363, 107 Atl. 479, it was held:

"It is clearly within the jurisdiction of this Court to entertain a bill to rescind and cancel a contract procured through coercion, misrepresentation, or any other fraudulent means, and in such suit to enjoin proceeding at law for the enforcement of the contract and also to award recovery of the money paid under and by reason of the fraudulent contract. The ancient jurisdiction of the Court of Chancery of England in this class of cases, as defined in 2 Pomeroy's Eq. Juris., Sec. 912, obtains in this State. See, to that effect, Eggers v. Anderson, 63 N. J. Eq. 264, 271; 49 Atl. 578, 55 L. R. A. 570. Whether the jurisdiction should be exercised, however, depends upon the circumstances of the

particular case. In this suit the circumstances that a successful defense at law to an action for the balance of the purchase price would afford but partial relief to complainant herein is alone a justification for retention of the bill."

The allegations of the bill warranted the court in assuming jurisdiction.

The allegations of the bill are amply supported by the evidence as disclosed by the transcript of the record here.

A careful consideration of the entire record reveals no reversible error and, therefore, the decree is affirmed.

So ordered.

TERRELL, C. J., and WHITFIELD, BROWN and THOMAS, J. J., concur.