NEW YORK LIFE INSURANCE COMPANY, Appellee, v. LOUIS ROTMAN et al., Appellants.

No. 45782.

1250

Kenline, Roedell & Hoffmann, for appellants.

Carr, Cox, Evans & Riley and Ehlers English, for appellee.

OLIVER, J.—Action in equity by New York Life Insurance Company against Louis Rotman and others, to cancel the disability and double-indemnity provisions in three policies insuring the life of said Louis Rotman. All the policies were issued upon the same application and appear to be identical in form. Therefore, they will be herein considered as one policy for the aggregate amount of $25,000.

The policy was issued in 1931. In 1939 the insured made claim for disability benefits. After investigating said claim, and before starting this suit, the company notified defendants that it rescinded the disability and double-indemnity provisions of the policy. At the same time it tendered the additional premiums (plus interest) received therefor, the amounts of which were separately fixed in the policy. The rescission was based upon alleged false and fraudulent representations in the 1931 application, in that the applicant had failed to disclose a serious ailment, and examinations and treatments by doctors therefor, in the year 1928. Insured claimed he had forgotten the prior ailment and treatments at the time the application was made. Upon trial the court decreed the rescission and cancellation of said disability and double-indemnity benefits and the return to assured of the tendered premiums. From said decree defendants have appealed.

An insurance policy of this kind may be regarded as con-

taining separate agreements, one being a life insurance agreement, the others providing for disability and double-indemnity benefits. Wilson v. Equitable L. Ins. Co., 220 Iowa 321, 262 N. W. 525. It will be noted that there was no attempt to rescind the general life insurance provisions, it being conceded by appellee that the two-year incontestability clause of the policy barred its right to rescind such provisions for fraud in the application. That clause reads as follows:

■ "Incontestability.—This Policy shall be incontestable after two years from its date of issue, except for non-payment of premium, and *except as to provisions and conditions relating to disability and double indemnity benefits.*" (Italics supplied.)

The principal proposition is whether the language above italicized takes away from the incontestability clause the bar of the right to rescind the disability and double-indemnity insurance agreements on the ground that the issuance of the policy was procured by fraud.

■ It is well settled that where the language of an insurance policy, prepared by the company, is ambiguous, it will be construed liberally in favor of the insured and strictly against the insurer so as to effect the dominant purpose of indemnity or payment to the insured. However, this rule of interpretation may properly be invoked only in case of ambiguity or obscurity. Where the language is plain and the contract clear and understandable the rule is inapplicable. Goodwin v. Provident Sav. L. Assur. Soc., 97 Iowa 226, 66 N. W. 157, 32 L. R. A. 473, 59 Am. St. Rep. 411; Wilson v. Equitable L. Ins. Co., supra; Levitt v. New York L. Ins. Co., 230 Iowa 456, 297 N. W. 888. With the foregoing doctrine the parties are not in disagreement. The real issue is whether there is an ambiguity in the provisions in question which may be fairly resolved against the company. The test to be applied by the court in determining this issue is not what the insurer intended its words to mean, but what a reasonably prudent person applying for insurance of this type would have understood them to mean.

■ Incontestability clauses in form and language substantially the same as that here in question have been frequently considered by other courts. One line of authority holds the language

is not ambiguous, and that it clearly excepts the disability and the double-indemnity insurance from the bar of incontestability. Among such cases cited by appellee are: Terry v. New York L. Ins. Co., 8 Cir., Mo., 104 F. 2d 498; Franco v. New York L. Ins. Co., 5 Cir., Ala., 53 F. 2d 562; Pyramid L. Ins. Co. v. Selkirk, 5 Cir., Tex., 80 F. 2d 553; Connecticut General L. Ins. Co. v. McClellan, 6 Cir., Ohio, 94 F. 2d 445; Equitable L. Assur. Soc. v. Deem, 4 Cir., W. Va., 91 F. 2d 569; Ruhlin v. New York L. Ins. Co., 3 Cir., Pa., 93 F. 2d 416, 106 F. 2d 921; Steinberg v. New York L. Ins. Co., 263 N. Y. 45, 188 N. E. 152, 90 A. L. R. 642; Guise v. New York L. Ins. Co., 127 Pa. Sup. 127, 191 A. 626; New York L. Ins. Co. v. Gresham, 170 Miss. 211, 154 So. 547; Millis v. Continental L. Ins. Co., 162 Wash. 555, 298 P. 739; Greber v. Equitable L. Assur. Soc., 43 Ariz. 1, 28 P. 2d 817; New York L. Ins. Co. v. Bonasso, 121 W. Va. 143, 2 S. E. 2d 260, 121 A. L. R. 1433; Weiss v. Pacific Mut. L. Ins. Co., 215 N. C. 230, 1 S. E. 2d 560; Smith v. Equitable L. Assur. Soc., 169 Tenn. 477, 89 S. W. 2d 165; Isom v. Equitable L. Assur. Soc., 138 Fla. 260, 189 So. 253; Guardian L. Ins. Co. v. Barry, 213 Ind. 56, 10 N. E. 2d 614; Schaedler v. New York L. Ins. Co., 201 Minn. 327, 276 N. W. 235; Scott v. New England Mut. L. Ins. Co., 127 Neb. 724, 256 N. W. 910.

Appellants rely upon authorities which hold identical or similar provisions to be ambiguous. New York L. Ins. Co. v. Kaufman, 9 Cir., Cal., 78 F. 2d 398; Stroehmann v. Mutual L. Ins. Co., 300 U. S. 435, 57 S. Ct. 607, 81 L. Ed. 732; Malloy v. New York L. Ins. Co., 1 Cir., N. H., 103 F. 2d 439; Coodley v. New York L. Ins. Co., 9 Cal. 2d 269, 70 P. 2d 602; Horwitz v. New York L. Ins. Co., 9 Cir., Ore., 80 F. 2d 295; New York L. Ins. Co. v. Thomas, 27 Pa. D. & C. 215; Penn Mut. L. Ins. Co. v. Kelley, 88 N. H. 351, 189 A. 345; Kiriakides v. Equitable L. Assur. Soc., 174 S. C. 140, 177 S. E. 40. Many authorities are collected in notes in 94 A. L. R. 1133 and 121 A. L. R. 1437. See, also, 29 Am. Jur. 682.

Not all of the cited cases are directly in point. In some the question here involved either was not a direct issue or was practically submerged by other questions. Others are affected by statutes. In some other cases the incontestability clauses employ different language.

Most of the authorities which hold ambiguous such language as, "except as to provisions and conditions relating to disability and double indemnity benefits," note that by the exception phrase the company would remove a part of the incontestability clearly provided in the first words of the clause, "This policy shall be incontestable * * *." They particularly stress the use of the words "provisions and conditions relating to," and point out that as a result of the use of this additional language the exception is not to the *benefits* but to the *provisions* and *conditions* relating thereto. They reason that this language would have been unnecessary to the meaning which the company would give to the phrase, and that the effect of these additional plural words is to particularize, and consequently, to limit, the exception. The policy contains blocked-off groups of provisions and conditions relating to such benefits, and it is pointed out that the language used may refer either to such blocked-off groups or to the insurance as a whole. These authorities conclude that when the insurance company prefers to employ words concerning which there is a fair doubt as to the meaning, or which are susceptible to more than one meaning, it must submit to the legal sanctions imposed for their ambiguous use.

In the main, the holding of the contrary line of authorities is that the exception is specific; that it is comprehensive in scope, applying to all such provisions in the policy; that the phrase "except as to provisions and conditions relating to disability and double indemnity benefits," does not grammatically modify the word "incontestable" and thus merely affect the causes of contest, but refers to the "policy" and relates to the whole subject matter of the policy insofar as it covers liability of the company for such benefits, and that it excepts the parts of the policy which grant such benefits. It is said the word "provisions," when used in reference to a contract, and without limiting words, includes all of the terms and provisions of the contract; that all the provisions of the policy relating to double indemnity and disability benefits are parts of one complete contract and must be read together; that when thus read as a whole the meaning is plain and not ambiguous, and that it clearly excepts such benefits from the incontestability clause.

The only case in which this court has considered the excep-

1254

tion phrase in an incontestability clause is Wilson v. Equitable L. Ins. Co., 220 Iowa 321, 322, 262 N. W. 525, 526. In that case the clause read as follows:

"* * * 'This policy shall be incontestable after one year from the date of issue, except for non-payment of premium and except as provided in paragraphs 14 and 15 relating to Disability benefits.' "

It was there held that, the company not having reserved to itself, in paragraphs 14 and 15, the right to contest the policy on the ground of fraud in its inception, the exception in the incontestability clause was without practical force or effect because there was nothing in said paragraphs 14 and 15 to which the exception should apply. It will be noted that the Wilson case turned largely upon the effect of the specific reference to paragraphs 14 and 15. The clause here involved contains no similar limitation. Because of this substantial difference in the two clauses, the Wilson case may not be considered a direct precedent which should be here followed.

Therefore, the applicable decisions of other courts are entitled to special consideration. On each side are able and well-considered decisions which advance persuasive reasons for the contrary holdings. As was said in Terry v. New York L. Ins. Co., 8 Cir., Mo., 104 F. 2d 498, 503:

. "Such an array of conflicting opinions by able courts makes it difficult to determine on which side the weight of authority 'tips the scales."

With due respect to those decisions which hold the clause is ambiguous, it is the conclusion of this court that the contrary rule is the sounder; that the clause applies to all the provisions of the policy and should be considered with the policy as a whole, and that when so considered it clearly provides that the disability and double-indemnity benefits shall not be incontestable. Additional reasons for this conclusion are, in general, those which have impelled other courts to hold such clauses to be unambiguous. They have been hereinbefore set out and need not be repeated.

██ Most of the factual questions involved in this case are uncontroverted. In 1928, the insured had been treated for an

auricular fibrillation from which he was then suffering, and had collected disability benefits from an insurance company on account of said ailment which he then described as heart trouble. In his application for this policy in 1931, insured stated he had not been treated by a physician during the past five years and had never suffered from any disease of the heart, blood vessels, or lungs. Said false statements, which concerned material matters, were believed and relied upon by the examining doctor and the insurance company and induced the issuance of the policy. Insured denied the statements were fraudulent and offered the excuse that when he made the application he had forgotten the ailments and treatments. The trial court held the statements were fraudulent. We agree with this holding. The decree canceling the disability and double-indemnity benefits of the policy is affirmed.—Affirmed.

All JUSTICES concur.