[Civil No. 3345. Filed January 22, 1934.]

[28 Pac. (2d) 817.]

DAVID GREBER, Appellant, v. THE EQUITABLE
LIFE ASSURANCE SOCIETY OF THE
UNITED STATES, a Corporation, Appellee.

Mr. Francis M. Hartman, for Appellant.

Messrs. Armstrong, Kramer, Morrison & Roche, for Appellee.

McALISTER, J.—This action was brought to recover disability benefits under three policies of insurance and resulted in a judgment for the defendant. Following an order overruling his motion for a new trial the plaintiff appealed.

On November 14, 1928, a life insurance policy for $10,000 carrying disability benefits of $100 a month was delivered to the plaintiff, David Greber, by the defendant, The Equitable Life Assurance Society

of the United States, and the first annual premium of $385.60 paid thereon. On December 4th following two other life policies of $5,000 each, carrying disability benefits, were also delivered to him by the same company and the first annual premium of $385.60 on them paid. For the three succeeding years the premium on these three policies, totaling $771.50 annually, eighty-eight of which covered the disability and double indemnity provisions, was paid by the insured.

In February, 1932, the plaintiff became ill with pneumonia and in June following, due to the fact that through continued illness he had been unable to perform any work, presented to the defendant his claim and proofs for disability benefits for $200 a month under the policies. The defendant, however, instead of paying it, notified him by letter dated July 15, 1932, that inasmuch as it had learned that certain material statements and answers made by him in connection with his applications for insurance, which resulted in the issuance to him of three policies containing disability and double indemnity provisions, were untrue, the contracts as to these provisions were not binding and were, therefore, rescinded, the Society denying and declining to assume any liability thereunder. It then offered to return and tendered to him the premiums paid under the disability and double indemnity provisions of the policies with interest, but he refused to accept these and within a few weeks thereafter brought this action to recover $1,400, the amount alleged to be due up to that time in disability benefits.

The applications for the policies which he signed contain the following statements:

"All of the foregoing answers and all those made to the Society's Medical Examiner, which are contained in Part 2 hereof, are true and are offered to the Society as an inducement to issue the policy for which application is hereby made.

"I agree that the foregoing answers shall be part of my application which shall consist of Parts 1 and 2 taken together, and that the foregoing answers shall also become part of any policy contract that may be issued on the strength hereof."

In the policies themselves appears this provision:

"The Contract. This policy, and the application therefor, a copy of which is endorsed hereon or securely attached hereto, constitute the entire contract between the parties. All statements made by the Insured shall, in the absence of fraud, be deemed representations and not warranties, and no statement shall avoid this policy or be used in defense of a claim hereunder unless contained in the written application therefor and a copy of such application is endorsed hereon or attached hereto when issued."

The plaintiff stated in his application, among other things, that he had never had or been treated for any disease of the nose, tonsils, throat or lungs, and that no application by him for insurance had ever been declined by any insurance company. In its answer, however, the defendant alleged that the plaintiff had had asthma, a disease of the lungs, and been treated therefor; that he applied to the Missouri State Life Insurance Company for a life policy in September, 1924, and that that company refused to issue him a policy. It alleged further that these two false statements and warranties, which were material to the risk, became a part of the policies and that they were made to induce the defendant to enter into the contract and relied on by it as true in doing so; that due to this fact the provisions in the policies for the payment of benefits in the event of total disability due to bodily injury and disease were then and have since remained wholly void and of no effect.

In his reply the plaintiff denied that he had ever had or been treated for asthma or any disease or disturbance of the nose, tonsils, throat or lungs, but

admitted that he applied to the Missouri State Life Insurance Company for a life policy in September, 1924, and that that company did not issue him a policy, though he alleged that it did not notify him that it had declined to do so, and that the defendant knew, or by the exercise of reasonable diligence should have known, when it accepted his money and issued him the policies in November and December, 1928, that that company did not issue a policy to him.

At the close of the testimony the defendant moved for an instructed verdict upon the ground, among others, that the evidence disclosed that the plaintiff had had asthma, a disease of the lungs, and that his application for insurance had been declined by another company notwithstanding his statement to the contrary in his application for these policies. The court granted the motion upon the latter ground but in doing so stated that the evidence relative to asthma presented an issuable fact to be passed on by the jury and that the case would be submitted to it if the testimony did not disclose without dispute that the plaintiff did apply to the Missouri State Life Insurance Company for a life policy in September, 1924, and that his application to that company was rejected. The plaintiff appeals from the judgment rendered upon the verdict returned in obedience to the direction of the court as well as from the order denying his motion for a new trial.

The principal question raised by appellant's eight assignments is that the court erred in directing a verdict for appellee, his contention being that the jury should have been permitted to determine whether his failure to inform appellee that his application to the Missouri State Life Insurance Company in September, 1924, had been rejected, was material in the matter of the application made by him in November, 1928, for disability or health insurance. Where an application with its answers becomes a part of

a policy, as it did in this case, a statement therein by the applicant that he has never been denied insurance is as a matter of law material and, if false, avoids the policy at the option of the insurer. This rule is accepted by practically all the courts and in our view rests upon a sound basis because disclosure of the fact that one applying for a policy has been rejected by another company immediately suggests that he is probably not a good risk and undoubtedly leads to a more careful and thorough examination than would be true in the case of one whose application had not been rejected. It not only informs the company whether other insurers have regarded him as unsafe, and places it, so to speak, upon inquiry, but may advise it as to any anxiety for insurance the applicant might have. 14 C. J. 1080; *Aetna Life Ins. Co.* v. *Moore*, 231 U. S. 543, 34 Sup. Ct. 186, 58 L. Ed. 356; *Mutual Life Ins. Co.* v. *Denton*, 93 Fla. 276, 112 So. 53. In volume 4, Cooley's Briefs on Insurance, 3228, second edition, is found this language and a long list of citations supporting it:

"Among the questions invariably asked of the applicant for life insurance is whether he had ever applied to any other company for insurance and been rejected. The purpose of the question is perhaps twofold—to discover whether the risk has ever been regarded as unsafe by other insurers, and to show the applicant's anxiety for the insurance. Whether the applicant has ever applied to other companies for insurance and been rejected is, therefore, regarded as material to the risk, and a statement in this regard whether made as a warranty or as a representation, will, if false, avoid the policy."

The position of appellant, however, is that even though this principle of law is sound the record discloses that at the time the policies were issued and the premiums paid appellee knew that the Missouri State Life Insurance Company had in September,

1924, rejected his application for a policy in that company and, therefore, the issuance of the policies and the acceptance of four annual premiums thereon with this knowledge constituted a waiver of its right to forfeit the policies upon this ground. This contention is correct if the record discloses such to be the situation, for the acceptance by the insurer of premiums knowing that facts exist which would authorize it to declare a forfeiture constitutes a waiver. 5 Cooley's Briefs on Insurance, 2d ed., p. 4325, and cases cited; 14 R. C. L. 1190. If, however, the facts relied on for the purpose are in dispute, or of such nature that more than one inference might be drawn from them, the question whether they are sufficient, like any other controverted question of fact, becomes a matter for the jury to determine. 5 Cooley's Briefs on Insurance, 2d ed., p. 4563.

To show that appellee knew of the previous rejection of his application appellant introduced in evidence a small card designated as a Medical Impairment History Card, which was taken by appellee from its index files and produced at the hearing to comply with an order of the superior court directing it to file with the clerk five days before trial all its records and files bearing on the question as to when appellee first learned, or by the exercise of reasonable care should have known, that appellant applied to the Missouri State Life Insurance Company in October, 1924, for a policy of life insurance and that it was not issued to him. These index files, according to the testimony, comprise an alphabetical list of appellee's policy-holders, and, in addition, of the Medical Impairment Bureau cards which consist of confidential information concerning the insurance record of individuals insured in other companies as well as in the Equitable, and also of applicants for

insurance in other companies and in the Equitable. This card reads as follows:

"Greber, David (Dave)

616 Taylor

B (1 Sep '80)          (1) 16 Sep '81
Rus

M  3 Nov '24    .    401za—603nhx

M 10 Feb '25        413x—603q4

M 31 Aug '32        429yzn—413yzn
429y(q)—413y(q)

M  5 Nov '32        413yx."

All these entries except the last two, those of August 31st and November 5th, '32, were on the card, or one for which it was a substitute, in November and December, 1928, when appellee issued the policies to appellant and accepted the premiums thereon, and, according to the testimony of Jay B. Doyle, Superintendent of the Index Section, they mean that on November 3, 1924, a report relative to David Greber, tailor, born in Russia on September 16, 1881, was made to appellee and that the term, "401za—603nhx," was the code symbols for that report. He stated further that a substitute card including at least the report of February, 1925, and possibly the other birth date, September 1, 1880, and the word "unemployed," must have been received by the Index Section. Just what the "M" and the symbols "401za—603nhx" stand for the testimony does not disclose, though a full compliance with the order of the court directing the filing of all its records bearing upon the question of its knowledge would doubtless have made this clear. Appellant suggests, however, that the "M" signifies the Missouri State Life Insurance Company and the symbols that his application to that company in September, 1924, was rejected and the reasons therefor. If it be given this construction, which is perhaps the correct one, this situation arises: When the applica-

tions of David Greber stating that he was a tailor born in Russia December 15, 1887, were received in November, 1928, and shortly thereafter accepted, appellee had in its files information disclosing that David Greber, tailor, born in Russia September 16, 1881, or possibly September 1, 1880, had applied to the Missouri State Life Insurance Company in September, 1924, for a policy of life insurance and that it was not issued to him.

Notwithstanding this was the condition of its records, the testimony in appellee's behalf was that it did not have actual knowledge of the previous rejection and, under the rule governing its method of checking applications with the information in its index files, could not have had. When, the testimony discloses, an application for insurance is checked with its files for a previous insurance record, or possibly a Medical Impairment Bureau record, of the applicant, and a name the same as that in the application is found, that fact is noted on the abstract, unless the date of birth in the application differs from that in the files and the difference is more than two years either way. In such instances no notation of the common name is made, except in those cases in which the application admits a prior declination, postponement or limitation in connection with some other application for insurance, and there was no such admission in the application in question.

Antoinette Hultmark, who in November, 1928, checked appellant's applications with appellee's index file records on David Greber, testified that when it appeared that the birth date in the applications, December 15, 1887, was more than two years later than that in the files and on the Medical Impairment Bureau card, September 16, 1881, or possibly September 1, 1880, and that the application did not mention any prior declination, postponement or limitation, she undoubtedly followed the regular practice

in such cases and made no notation on the abstract of the existence of the common name, David Greber.

Arthur H. Thompson, employed as a correspondent in the Disability Section of the Correspondence Division of the Equitable, testified that the first information appellee had of the previous rejection was in a letter dated June 10, 1932, from the Missouri State Life Insurance Company. Appellee had received from appellant in May, 1932, a request for blanks on which to file proofs of total disability under his policies and in the communication had stated that he had group insurance of $1,000 in the Missouri State Life Insurance Company, and to ascertain that company's claim experience with Greber under that policy, Thompson wrote it June 3, 1932, and received a reply informing him of the rejection in September, 1924.

Even, therefore, if the entries on the card be given the meaning appellant contends they have, it is apparent that the officer or officers to whom the applications and the abstract were passed for examination and approval medically and otherwise could not have known that he had been previously rejected, since the rule or practice the checker followed in comparing the information in the application with that in the files made it her duty to note on the abstract a common name only when the birth date in the application was not more than two years before or after that appearing on the Medical Impairment Bureau card and in the index files, and the date of birth in the application of David Greber was December 15, 1887, while that of the person by that name in the files was September 16, 1881, or possibly September 1, 1880, a difference of over six years in the one case and of over seven in the other. This merely meant to the checker that the David Greber in the application and the David Greber in the index files were different persons of the same

name and, therefore, did not give knowledge of the previous rejection; it was not even constructive notice of that fact, though it might have been had the law required appellee to make an independent investigation by comparing the application with the index files or had compliance with the rule itself demanded of the checker that she compare in other respects than those of name and date of birth, for instance, occupation and place of birth. Appellee could have relied on the statements in the application as to a previous rejection, in which event the question of waiver or estoppel could not have arisen, but it did make one for its protection and its experience was such that it should have known if the practice of comparing as to name and date of birth only was best adapted to the accomplishment of its purpose.

Appellant's counsel propounded to him an interrogatory intended to elicit an answer that would have substantiated the allegation of his reply that he, not being familiar with the English language, did not understand the meaning of the following question of the medical examiner, and, particularly, of the word "declined," when he answered it "no": "Has your application for life insurance ever been declined, postponed or limited to a policy different from the one applied for?" The court sustained an objection to the interrogatory and its action in doing so is assigned as error. The ruling was correct, for the effect of the answer, so far as appellee was concerned, was the same whether appellant understood the question or not. It was his duty to give the insurer through the medical examiner correct information as to his previous rejection to guide it in passing on his applications and, if he did not know the meaning of the question he should have had someone explain it to him before replying to it orally or attaching his name to the report of the doctor which

included both it and the answer. Having led appellee to act upon the theory that the answer was correct, whether through a misunderstanding of the question or intention to mislead, appellant was estopped from thereafter asserting anything that would have changed the effect of that reply. In addition, an exact copy of the answers he had made in his application, Part 2, Statements to Medical Examiner, was, pursuant to section 1847, subsection 3, Revised Code of 1928, attached to the policy before it was delivered, and a reading of it when he received it would have disclosed to him that he had answered the physician incorrectly relative to a previous rejection and have led, if it had been done inadvertently, to a correction of it. In *Minsker* v. *John Hancock Mutual Life Ins. Co.*, 254 N. Y. 333, 173 N. E. 4, 81 A. L. R. 829, the court says:

"When an insured receives a policy, it is his duty to read it or have it read, and, if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected."

See *Kwiatkowski et al.* v. *Brotherhood of American Yeomen*, 243 N. Y. 394, 153 N. E. 847; *New York Life Ins. Co.* v. *Fletcher*, 117 U. S. 519, 6 Sup. Ct. 837, 29 L. Ed. 934; *Bollard* v. *New York Life Ins. Co.*, 98 Misc. 286, 162 N. Y. Supp. 706.

It is a further contention of appellant that since the policies had been in force more than two years they were incontestable under section 1847, *supra,* providing as follows:

"No policy of life insurance, other than industrial insurance, annuities and pure endowments with or without return of premium shall be issued or delivered unless they contain the substance of the following provisions: . . .

"3. That the policy constitutes the entire contract between the parties and is incontestable after not

more than two years from its date, except for non-payment of premiums and except for violation of the conditions of the policy relating to naval and military service in time of war.''

The policies themselves contain a provision limiting the right to contest them to a period of one year but in so doing specifically except the provision relating to the disability and double indemnity features. It reads:

''This policy, except as to the provisions relating to Disability and Double Indemnity, shall be (2) incontestable after it has been in force during the lifetime of the Insured for a period of one year from its date of issue provided premiums have been duly paid.''

Appellant's position is that each policy is one entire contract and that the exception from the one-year clause of ''the provisions relating to disability and double indemnity'' is, in the face of the statute, without force or effect. There is no conflict between this provision of the policy and section 1847, because the latter only refers to policies of ''life insurance, other than industrial insurance, annuities and pure endowments with or without return of premiums,'' and does not include disability insurance. The mere fact that the disability provisions appear in a policy of life insurance neither changes their character nor makes applicable to their provisions the principles governing that class of insurance. They should be treated as though they were a separate policy covering only disability insurance.

Several other assignments are made but in view of what is said above, it is unnecessary to discuss them.

Judgment affirmed.

ROSS, C. J., and LOCKWOOD, J., concur.