MUTUAL LIFE INS. CO. OF NEW YORK
v. MORAIRTY.

No. 12248.

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1949.

Rehearing Denied Jan. 23, 1950.

Louis W. Dawson, New York City, Evans, Hull, Kitchel & Jenckes, Norman S. Hull and Richard P. Meason, Phoenix, Ariz., for appellant.

Arthur L. Goodmon and Frank J. Duffy, Phoenix, Ariz., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

BONE, Circuit Judge.

On June 16, 1947 appellant issued a policy of life insurance for a term of one year to Albert Francis Morairty who was then 58 years old. Pursuant to the application of Morairty, his wife, Ruth M. Morairty (appellee) was named as beneficiary in the policy.

On January 28, 1948 the insured died from a cerebral concussion caused by a fall. Appellee filed due proof of death. Appellant tendered the amount of the premium paid plus interest, but denied liability under the policy on the ground that it was void because its issuance had been induced by the insured's misrepresentation and concealment of material facts concerning his prior medical history which had been inquired about in the written application for the policy.

Appellee originally instituted this action in the Superior Court of Arizona for recovery of the face amount of the policy. On appellant's petition the action was removed to the United States District Court in

Arizona on the ground of diversity of citizenship. Appellant's answer set up the affirmative defense above referred to and renewed the tender of the sum paid in as premium, plus 6% interest to date.

Upon trial the jury returned a verdict in favor of appellee and judgment was entered thereon. Appellant's motions for a directed verdict, and for a judgment notwithstanding the verdict or in the alternative, for a new trial, were denied. The trial court's rulings on these motions are specified as error on this appeal. Other specification of error concern certain instructions given over objection and other instructions which the court refused to give, and the admission, over appellant's objection, of evidence concerning the insured's reputation for truth, honesty and integrity.

The application attached to the policy (which is in evidence) and signed by the insured, contained the usual statement that, "All the statements and answers in this application including those made to the Medical Examiner are made to induce the company to issue the policy and are true." The statements in the application which are relied upon by appellant will be considered below in relation to the evidence which allegedly shows their falsity. The answers were written on the questionnaire by appellant's examining physician, Dr. Woodman (who at the time of the application and at various times prior thereto was also the insured's personal physician). In signing the application, the insured certified, "that each and all of the foregoing statements and answers were read by me and are fully and correctly recorded by the Medical Examiner." The policy contained the provision, "This Policy and the application, copy of which is attached, constitute the entire contract."

In answer to, "State every illness, disease, injury and operation you have had since childhood," the insured named hay fever or Bermuda allergy. The application asked for names and addresses of every physician consulted for any purpose in the last five years, together with the date and nature of the illness. Three doctors (Woodman, Porter and Robb) were named as having treated the applicant for an infected wisdom tooth and an acute cold in October of 1946.

The following questions, among others, appeared under the heading, "If answered 'yes' give dates and full details under remarks."

"Q. Have you ever had an X-ray, blood test, electrocardiogram or other special laboratory test? A. No.

"Q. Have you ever been in a hospital, clinic, sanitarium or institution for observation or treatment or other medical purpose? A. Yes. Remarks: Acute cold six years ago in Good Samaritan Hosp., Phoenix, Ariz., 3 days complete recovery.

"Q. Have you ever had goiter, cancer, tumor or ulcer? A. No.

"Q. Have you ever had acute indigestion, stomach or gall bladder trouble, colic or gall stones. A. Yes. Remarks: Consulted Dr. Joseph Bank, 800 No. 1st Ave., Phoenix, Ariz. 6 years ago—X-ray of G.I. tract revealed diverticuli. Takes metamucil regularly and has been free from gas or other gastro-intestinal symptoms for past 6 years. No dietary restrictions.

"Q. Have you given complete answers to all the above questions? A. Yes."

From the undisputed testimony of physicians called as witnesses for appellant and from hospital records introduced in evidence it was shown that the insured's medical history was considerably more serious than the application questionnaire revealed.

In 1936 Morairty suffered a severe loss of blood from hemorrhages of the gastro-intestinal tract, and was confined in the Good Samaritan Hospital for 13 days. Dr. Fahlen, who was his attending physician at that time, testified that Mr. Morairty was suffering from an extreme case of secondary anemia occasioned by the hemorrhage, and that treatment consisted of a blood transfusion and a milk diet. Dr. Fahlen's diagnosis was that the patient had a duodenal ulcer, but an X-ray revealed only diverticuli. Dr. Fahlen does not remember whether he informed Moriarty of his ulcer diagnosis, but he did tell him that he was

seriously ill and further testified that Morairty was conscious during his treatment and knew that he received a blood transfusion.

Dr. Woodman (who was appellant's medical examiner and one of the doctors listed on the questionnaire) testified that Morairty consulted him about a digestive ailment in 1937 or 1938; that the symptoms were gas and pain in the abdomen but that no bleeding was present; that his diagnosis was diverticuli and that he referred the patient to his associate, Dr. Bank (who is mentioned on the application under "Remarks") who confirmed that diagnosis.

Dr. Bank testified that in 1938 he was consulted by Morairty who then told him that he had previously been treated at Good Samaritan Hospital for hemorrhages and had received a transfusion, that the doctors there had suspected an ulcer but that an X-ray was negative.

In 1944 Morairty suffered a recurrence of bowel hemorrhages and was confined in St. Joseph's Hospital for a period of seven days at the insistence of Dr. Flynn, who had been called in to treat him. Dr. Flynn testified that the loss of blood due to the hemorrhages was extreme and that he found it necessary to give two transfusions in order to replace the lost blood. Also that the patient was placed on a smooth diet. He testified that Morairty told him of similar bleeding in the past which had been attributed to diverticuli. Dr. Flynn did not know whether the hemorrhages were caused from the diverticuli, or from an ulcer or from some other cause.

Appellant's chief actuary and chief medical director both testified that Morairty would not have been accepted as a standard risk had the company been informed of the true facts concerning Morairty's medical history as revealed by the evidence.

Appellee introduced three witnesses. Dr. Williams, who performed the autopsy, testified, over appellant's objection, that cause of death was a cerebral concussion suffered about two weeks prior to death. He said that the autopsy revealed a recent peptic ulcer which might have been caused by the concussion, but that there was no evidence of an old ulcer. However, he testified that it was possible for ulcers to heal without leaving any scar tissue.

Fred Joyce, the agent who sold the insurance, testified that Morairty told him that he wanted the policy for a one year term for business reasons. He also said that the company had conducted an investigation before issuing the policy, and that he (Joyce) did not know of the previous hospitalizations, hemorrhages or transfusions.

Mrs. Morairty testified that she knew that the 1936 hemorrhage was serious at the time, but did not consider it in the nature of a permanent illness. Over objection of appellant, she testified that from conversations with Dr. Woodman in 1937 she knew that he was informed of the 1936 hospitalization and the treatment by Dr. Fahlen. She also said that her husband returned to work within three days from the time he was discharged from the hospital in 1944 and that there were no indications of bleeding or weakness between 1936 and 1944 nor from 1944 up to the date of his death.

The principal question before us is whether or not, under the applicable Arizona law, appellant had established the defense (that the insured made a misrepresentation of a material fact in his application) as a matter of law, and was therefore entitled to a directed verdict or to a judgment notwithstanding the verdict.

We are persuaded that the question must be answered in the affirmative.

■ Under the law of the State of Arizona, as established by the leading case of Illinois Bankers Life Ass'n v. Theodore, 44 Ariz. 160, 34 P.2d 423, (see also Illinois Bankers Life Ass'n v. Theodore, 47 Ariz. 314, 55 P.2d 806), it is not necessary that actual fraud, or intent to deceive, be shown in order to make such an insurance policy voidable. If it be shown that the applicant made false statements concerning material facts which facts were of such nature that they were presumably within the

personal knowledge of the applicant, as distinguished from mere statements of opinion, the insured is guilty of legal fraud whether or not he intended to deceive the insurer.

■ The test of materiality is whether the facts, if truly stated, might have influenced a reasonable insurer in deciding whether to accept or reject the risk; the insurer need not show that it would have rejected the applicant had it known of the falsity of the claim. First National Benefit Soc. v. Fiske, 55 Ariz. 290, 101 P.2d 205.

■■ In this case we agree that Morairty's statement that he had never had an ulcer might be considered true, there being no positive evidence that at the time of the application or theretofore he had actually had an ulcer. Viewing the evidence in the light most favorable to appellee, Morairty's remarks concerning the hospitalization at the Good Samaritan Hospital, although erroneous as to the exact date, duration of, and reason for, confinement might possibly be considered as substantial compliance with the requirement that "dates and full details" be given. However, he completely failed to disclose his confinement at St. Joseph's Hospital which occurred several years subsequent to the first hospitalization and only three years prior to the date of the application. We do not think it likely that he forgot the more recent hospitalization, and in any event this was a fact presumably within his personal knowledge within the rule of the Theodore case, supra.

It is true that Morairty revealed the existence of the diverticuli and that he had consulted Dr. Bank in that respect about "six years ago" (the evidence showed that it was actually about nine years prior to the date of application). However he stated affirmatively, on the application, that he had been free from gas and other gastrointestinal symptoms from that time. The evidence showed that this representation was false; that in 1944 (6 years after the Dr Bank consultation and 3 years prior to the time of the application) he had suffered a recurrence of the old trouble, was confined to a hospital under the care of Dr.

Flynn, and was there given blood transfusions to replace blood lost through the intestinal hemorrhages.

In Sovereign Camp, W. O. W. v. Sandoval, 47 Ariz. 167, 54 P.2d 557, the Arizona Supreme Court said that an unrevealed office call or even a house call for a minor ailment might not be such a misrepresentation in regard to a question concerning the attendance of a physician as would avoid the policy. This qualification is inapposite to the facts of the instant case, for here Morairty, when asked to name every physician consulted for any purpose in the past five years (together with the nature of the illness) named only physicians who had treated him for trivial ailments, and failed to divulge the name of the only physician (Dr. Flynn) whom he had consulted during that period for a serious illness and one which required hospitalization and blood transfusions.

■ We think that the failure to divulge the seriousness of the ailment, its reactivation, the hospitalization and the name of the consulting physician must be held as a matter of law to constitute a misrepresentation of material facts, under authority of the Arizona decisions cited above. We do not think that Woodmen of the World Life Ins. Soc. v. Velasquez, 60 Ariz. 457, 139 P.2d 766, cited by appellee holds otherwise, for in that case the Arizona Supreme Court reiterated the rule of the Theodore case, supra, but held that under the facts presented, the question was for the jury because there was no evidence that the insured knew of the existence of the disease or had consulted a physician prior to the time the policy was issued.

Appellee contends that even though false representations were made, their materiality was a jury question for two reasons: first, because the subject matter of the representations was not connected with the cause of death; second, that since the existence of the illness or infirmity (diverticuli) was disclosed on the application, failure to reveal prior or subsequent symptoms or aggravations or treatment of that same illness would be immaterial.

■ With regard to appellee's first contention, the trial court refused to instruct the jury that in considering the materiality of any misrepresentations, the cause of death was immaterial. To the contrary, the jury was instructed, over appellant's objection, to the effect that the materiality of any untrue answers could be considered in light of the fact that the undisputed evidence showed that cerebral concussion was the sole cause of death. This instruction was erroneous and probably explains how the jury was able to reach the verdict for appellee. Under such an instruction no misrepresentation however flagrant would be considered material where, as here, death resulted from accidental means.

■ The almost universal rule is that, in the absence of a contrary statute, there need be no causal connection between the cause of death and the misrepresentation, for the reason that the test of materiality of misrepresentations is determined by whether or not knowledge of the true facts would, at the time the policy was issued, have increased the risk or influenced the insurer in determining whether to accept or reject the risk. See extensive discussions and collations of cases in 131 A.L.R. 617; 148 A.L.R. 912; 45 C.J.S., Insurance, § 595, p. 406; 29 Am.Jur. (Pocket Supp.) § 964.1.

There was formerly an Arizona statute which provided that no representation should be deemed material unless it actually contributed to the event upon· which the policy became due, but that statute was repealed by the legislature in 1913. See Brotherhood of America Yeoman v. Manz 23 Ariz. 610, 206 P. 403. We are not advised that it has been reenacted by the legislature or that the Arizona Supreme Court has seen fit to apply that rule to contracts entered into after the date the statute was repealed. Indeed, in Greber v. Equitable Life Ass'n, 43 Ariz. 1, 28 P.2d 817, and first Nat. Ben. Soc. v. Fiske, 55 Ariz. 290, 101 P.2d 205, that court declared that false statements that the insured had never been denied insurance were material as a matter of law. Such statements of course did not "contribute to the event upon which the policy became due."

Appellee's second contention must be considered in the light of the nature of diverticulitis as disclosed by the evidence. The doctor's testimony indicated that diverticuli are small "pouches" which protrude outward from the wall of the gastro-intestinal tract, usually in the colon. These pouches, once extant, ordinarily stay with a man for the rest of his life. In many cases they cause no trouble; in some cases they may result in mild digestive disturbances; in rare cases they may become inflamed enough to cause loss of blood into the bowel with consequent serious results.

■ Therefore, even assuming the hemorrhages were caused solely by the diverticuli (and this is giving appellee the benefit of doubtful evidence for if they were caused by some other illness or infirmity there could be no conceivable excuse for failing to reveal the hemorrhages and treatment) we are convinced that despite Morairty's disclosure of the existence of the diverticuli, his failure to disclose the serious hemorrhages which he may have believed were caused by diverticulitis, coupled with his affirmative declaration that he had been free from gastro-intestinal symptoms for the past six years, and his non-disclosure of the hospitalization and treatment by Dr. Flynn in 1944, constituted a concealment or misrepresentation of material facts which were presumably within the knowledge of the insured, and, under the Arizona authorities discussed above, this amounted to legal fraud sufficient to invalidate the policy.

The trial court erred in denying appellant's motion for a directed verdict and in later denying the motion for judgment notwithstanding the verdict. We see no reason for discussion of other alleged errors.

The judgment is reversed and the cause remanded with direction to the lower court to enter judgment for appellant upon payment to appellee of the amount of the premium paid on the policy plus interest thereon, in accordance with the tender offered in Paragraph II of appellant's amended answer.