475 P.2d 518

**Hugh E. SMITH, Appellant,**

**v.**

**REPUBLIC NATIONAL LIFE INSUR-
ANCE COMPANY, Appellee.**

**No. 2 CA–CIV 867.**

Court of Appeals of Arizona,
Division 2.

Oct. 21, 1970.

Rehearing Denied Nov. 19, 1970.
Review Granted Jan. 12, 1971.

Bernard I. Rabinovitz and Lawrence Ollason, Tucson, for appellant.

Carson, Messinger, Elliott, Laughlin & Ragan, by Robert W. Holland, Phoenix, for appellee.

KRUCKER, Judge.

Plaintiff, Hugh Smith, sued defendant, Republic National Life Insurance Company, for damages sustained by defendant's failure to pay benefits owed to plaintiff under a hospital and surgical policy. The case was tried to the court, sitting without a jury, which entered judgment in favor of defendant and made findings of fact and conclusions of law. Plaintiff's motion for a new trial was denied. He appeals from the judgment and denial of the motion for a new trial.

The findings of fact are undisputed by either party. Plaintiff applied for insurance with defendant. On the application, two questions were answered falsely, but the answers were filled in by defendant's general agent who intended to de-

fraud as he filled them in. Plaintiff signed the application, but did not read the certification above his signature and was induced to not read the application by the agent. There was no fraudulent intent at any time on the part of plaintiff.

The two questions presented are:

(1) Was recovery by the plaintiff prevented by A.R.S. § 20–1109?

(2) Did the failure of the plaintiff to read the application after the issuance of the policy defeat his right to recover under the insurance policy in question?

We take these issues together.

These questions presently sit in the grey area of law beyond those questions recently decided by this court in Marine v. Allstate Insurance Company, 12 Ariz.App. 229, 469 P.2d 121 (1970). In that case the insured was held bound by misstatements in his application for insurance when he signed the certification as to the application's completeness and truth. The application did not contain information of his sclerosis condition. The court believed defendant had an opportunity to read the application and make corrections and thus should be held responsible. This, they believed, was true even though it was taken as true that the insured had actually told the agent of the condition, who then apparently left it out.

Here, the facts differ only in that the agent intended to fraudulently fill in the application and then induced the insured to not read it.

■ We again reiterate what was said in *Marine*, supra. The rule is that an insured is bound by misstatements appearing in an application attached to the policy and delivered to and returned by him. Greber v. Equitable Life Assurance Society of

United States, 43 Ariz. 1, 28 P.2d 817 (1934); A.R.S. § 20–1109. The reason for the rule is that the insured should read and correct any errors or omissions.

We do not believe the reasoning is diminished because the agent intentionally omitted or lied on the application. The omission or error is still present and correctible by the insured regardless of the agent's motive in so creating them.

We do believe, however, that the rule holding an insured responsible collapses when he can prove he was in fact unable to make the correction or unable to ascertain the error. A change on the application by an agent subsequent to its being signed could present sufficient justification for altering the rule. Or, the inaccurate, fraudulent reading of an application to an illiterate insured might also justify altering the rule. 7 G. Couch, Cyclopedia of Insurance Law § 35–235 (2d ed. 1961).

■ In the instant case, we do not believe the rule need be altered. Although the insured here was induced to not read the policy when he signed it, we believe that he had an obligation then or later to peruse the application and note the necessary corrections.[1] We believe this rule was decided firmly in *Greber*, supra, when the Arizona Supreme Court said:

"'When an insured receives a policy, *it is his duty to read it or have it read*, and, if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected.'" (Emphasis added) 43 Ariz. at 12, 28 P. 2d at 821.

Judgment affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.

---

1. Cases in other jurisdictions support the view that it is inexcusable negligence to not read the application. 7 G. Couch, Cyclopedia of Insurance Law § 35–229 (2d ed. 1961). Cases to the contrary also exist.