483 P.2d 527

**Hugh E. SMITH, Appellant,**

v.

**REPUBLIC NATIONAL LIFE INSUR-
ANCE COMPANY, Appellee.**

**No. 10289–PR.**

Supreme Court of Arizona,
In Banc.
April 2, 1971.

Bernard I. Rabinovitz and Lawrence Ollason, Tuscon, for appellant.

Carson, Messinger, Elliott, Laughlin & Ragan, by Robert W. Holland, Phoenix, for appellee.

UDALL, Justice.

Plaintiff, Hugh English Smith, sued the defendant insurance company for damages sustained as a result of defendant's refusal to pay benefits provided for by a hospital and surgical policy under which plaintiff was the insured. The case was tried to the court sitting without a jury. The trial court entered judgment in favor of defendant and rescinded the policy of insurance. Plaintiff's motion for a new trial was subsequently denied. The Court of Appeals affirmed the action of the trial court, 13 Ariz.App. 228, 475 P.2d 518 (1970).

We granted plaintiff's Petition for Review. The decision of the Court of Appeals is vacated. For the reasons advanced below, the judgment of the trial court is reversed and the cause is remanded for a determination as to the amount to be awarded to the plaintiff.

The facts relevant to the determination of this appeal are as follows: In October, 1967, plaintiff applied for an insurance policy covering hospital and surgical expenses. Defendant insurance company issued the policy later the same month. Plaintiff was hospitalized in January, 1968. When plaintiff applied for benefits provided for in the policy, defendant refused to pay said benefits, stating that the application for insurance, on the basis of which the policy had been issued, contained misrepresentations with respect to prior illness. At the trial it was determined that certain of the answers contained in the application for insurance were in fact untrue. However, it was also determined that: (1) defendant's general agent asked questions of the plaintiff and filled in the blanks of the application form; (2) the general agent fraudulently entered false answers to some of the questions on the application form; (3) plaintiff was induced by the agent to sign the application without reading either the application or the certification above his name; and (4) plaintiff had no intent to misrepresent, omit, or conceal any facts nor to make any incorrect statements. These facts were included in the Findings of Fact and Conclusions of Law as entered by the trial court.

Plaintiff apparently did not read the insurance policy or the application attached thereto when it was delivered to him or thereafter, although he was free to do so. He paid the premiums on the policy up to and including the time of hospitalization. The trial court stated that the plaintiff had a duty to read the terms of the policy and the application for insurance attached thereto, and to correct any answers included in the application form which were incorrect. On this basis, the trial court held that plaintiff's failure to read the policy and have the incorrect answers corrected constituted a breach of the above duty and prevented recovery under the policy. The trial court also held that recovery was prevented under A.R.S. § 20–1109, discussed hereafter. Based on these conclusions, the trial court entered judgment in favor of the defendant insurance company and rescinded the policy of insurance, granting plaintiff only the right to receive reimbursement of all premiums paid since the inception of the policy.

On appeal, the plaintiff raises the following questions:

1. *Was recovery by the plaintiff precluded under A.R.S. § 20–1109?*

2. *Did the failure of the plaintiff to read the application form after the policy was issued defeat his right to recover under the policy?*

We will discuss these issues in the order presented.

## I. WAS RECOVERY BY THE PLAINTIFF PRECLUDED UNDER A.R.S. § 20–1109?

The determination of this issue requires that we construe the meaning of A.R.S. § 20–1109, which provides as follows:

"§ 20–1109. *Statements as representation; effect of misrepresentation upon policy*

All statements and descriptions in any application for an insurance policy or in negotiations therefor, by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy unless:

1. Fraudulent.

2. Material either to the acceptance of the risk, or to the hazard assumed by the insurer.

3. The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise."

This statute was enacted by our legislature in 1954 as § 61–2309 of the 1939 Code (1954 Supp.). In the 1954 enactment, the wording was exactly the same as above, except that the word "or" appeared after the first and second subparagraphs. The pertinent portions of § 61–2309, 1939 Code (1954 Supp.) read as follows:

" * * * Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy unless:

(a) Fraudulent; *or*

(b) Material either to the acceptance of the risk, or to the hazard assumed by the insurer; *or*

(c) The insurer in good faith would either not have issued the policy, or would not have issued a policy in as large an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to the insurer as required either by the application for the policy or otherwise." [Emphasis added.]

When the Arizona Revised Statutes were published in 1956, the above section appeared at § 20–1109 thereof. The wording was exactly the same except that the semicolon and the word "or" were dropped after the first and second subparagraphs and a period was inserted in their place.

As to the significance of this change in the wording of the statute, plaintiff Smith argues on appeal that the omission of the word "or" is a manifestation of a legislative intent to repeal that portion of the previous statute and require that the later enactment be read in the *con*junctive as opposed to the *dis*junctive—that is, so as to require that the elements or requirements of *all three* subparagraphs be met in order for the insurer to deny recovery.

On the other hand, defendant insurance company argues that the later enactment must be read in the *dis*junctive—that is, recovery can be denied if the elements or requirements in *any* of the subparagraphs are met. This approach is the same as that followed by the trial court. In apply-

ing this approach, the trial court first made the following Finding of Fact:

"Inasmuch as the Court has found that A.R.S. § 20–1109 is applicable to the decision of this matter, the Court further finds that *the incorrect answers in the application for insurance were*:

A. *Not fraudulent*;

B. *Material* either to the acceptance of the risk or to the hazard assumed by the insurer; and

C. *The insurer in good faith would not have issued the policy* if the true facts had been made known to the insurer as required by the application for the policy." [Emphasis added.]

The trial court, in its Conclusions of Law, held that the three subparagraphs of A.R.S. § 20–1109 should be read in the *dis*junctive—i. e., if the requirements of *any* of the subparagraphs were met, recovery could be denied. Under this theory, the trial court held that recovery was prevented under *either* subparagraph 2 *or* subparagraph 3 of A.R.S. § 20–1109.

The question before us, then, is whether, in order for recovery to be denied under A.R.S. § 20–1109, it is necessary for the elements of *all three* subparagraphs to be met, or whether it is enough if the elements in *any* of the subparagraphs are met. In making this determination, we feel it appropriate to review the legislative history of A.R.S. § 20–1109, including a discussion of some of the Arizona cases decided prior to the enactment of the statute but dealing with the subject matter covered by the statute.

At one time under Arizona law, statements made in an application for insurance were given the status of warranties, at least where they were denominated as such in the policy, and were treated accordingly. See North British & Mercantile Insurance Co. v. San Francisco Securities Corporation, 30 Ariz. 599, 249 P. 761 (1926). The legislature, in enacting A.R.S. § 20–1109, lessened the harshness of this rule by providing, in the first paragraph thereof, that all statements in an applica-

tion for insurance, by or in behalf of the insured, *"shall be deemed to be representations and not warranties."*

The first two subparagraphs of A.R.S. § 20–1109 appear to be a codification of prior Arizona decisions requiring that an insurance company attempting to void a policy must prove that the applicant was guilty of either actual fraud or legal fraud,[1] *and* that such fraud was material to the acceptance of the risk or hazard assumed by the insurer. Modern Woodmen of America v. Stevens, 70 Ariz. 232, 219 P.2d 322 (1950); Illinois Bankers' Life Association v. Theodore, 44 Ariz. 160, 34 P.2d 423 (1934).

The third subparagraph of A.R.S. § 20–1109 appears to be a statutory overruling of a 1940 Arizona decision which held that it was *not* necessary for an insurer to prove that it would have rejected the application if it had been given knowledge of the true facts. See First National Benefit Society v. Fiske, 55 Ariz. 290, 101 P.2d 205 (1940).

■ After carefully considering the authority bearing on the question of the proper interpretation of A.R.S. § 20–1109, we are of the opinion that the subparagraphs of the statute must be read in the *conj*unctive. That is, in order for recovery to be prevented under a policy because of misrepresentations, omissions, concealment of facts, or incorrect statements, the evidence must show the elements set forth in *all three* subparagraphs of the statute; meeting the requirements of only one or two of the subparagraphs is not enough.

■ Applying this holding to the instant case, we must conclude that the trial court

erred in holding that recovery by the insured was prevented under *either* subparagraph 2 *or* subparagraph 3 of the statute, even though the requirements of subparagraph 1 were clearly *not* met.[2]

For the reasons advanced above, we conclude that recovery by the plaintiff is *not* precluded under A.R.S. § 20–1109.

## II. DID THE FAILURE OF THE PLAINTIFF TO READ THE APPLICATION FORM AFTER THE POLICY WAS ISSUED DEFEAT HIS RIGHT TO RECOVER UNDER THE POLICY?

■ The trial court, in its Conclusions of Law, held that when the plaintiff received the policy he had a duty to read the terms of the policy and the application for insurance incorporated in the policy, and to correct any answers shown on the application which were incorrect. The trial court further held that plaintiff's failure to read the insurance policy and have it corrected breached this duty and prevented recovery under the policy. As authority, the trial court cited Greber v. Equitable Life Assurance Society, 43 Ariz. 1, 28 P. 2d 817 (1934), which set forth the following rule:

"When an insured receives a policy, it is his duty to read it or have it read, and, if an application incorporated therein does not contain correct answers to the questions asked by the medical examiner it is his duty to have it corrected." 43 Ariz. at 12, 28 P.2d at 821.

At the outset, it should be noted that in Greber v. Equitable Life Assurance Society, supra, cited as authority by the trial

---

1. *Actual* fraud requires an intent to deceive; *legal* fraud does not. Where the facts involved in the questions in an application for insurance are of a type which would presumably be within the personal knowledge of the applicant, and are such that the insurer would naturally contemplate that the applicant's answers represented actual facts, then the applicant is guilty of *legal* fraud if his representations are false, even in the absence of an intent to deceive. However,

where the facts are merely an expression of opinion, *actual* fraud (i. e., intent to deceive) must be shown. Woodmen of the World Life Insurance Society v. Velasquez, 60 Ariz. 457, 139 P.2d 706 (1943).

2. The trial court, in its Findings of Fact, stated that the incorrect answers in the application were *not fraudulent*; hence, the requirement of fraud as set forth in subparagraph 1 was clearly not met.

court, it was the *applicant*, rather than the *agent*, who was responsible for the false answers which were entered on the application for insurance. This distinction will take on greater significance as we consider the issues raised by the holding of the trial court.

In the instant case the applicant gave full and truthful answers to the questions asked of him by the agent. The agent, in filling out the application, fraudulently entered incorrect answers without the fault, knowledge, or collusion of the applicant. The agent also induced the applicant to sign the application without first reading either the application or the certification above his name. The question presented is whether, under these circumstances, the defendant insurance company can properly deny recovery under the policy.

The issues raised by this question are discussed in considerable depth in an annotation at 26 A.L.R.3d 6, entitled "Insured's Responsibility For False Answers Inserted by Insurer's Agent in Application Following Correct Answers By Insured, Or Incorrect Answers Suggested By Agent." This annotation is over 300 pages in length, suggesting the frequency with which this area of the law has been the subject matter of litigation. With regard to cases involving circumstances substantially identical with those in the case at bar, the annotation makes the following summary:

"[M]any decisions by the courts of a large number of jurisdictions support the view that *where an insurer's agent enters false answers to questions contained in the insurance application, following and despite a truthful disclosure by, and without the knowledge of, the applicant or insured, who acted in good faith and was free of fraud or collusion, the insurer ordinarily is responsible for such erroneous answers and cannot defend an action* on the policy issued upon the ap-

plication *on the ground of the falsity thereof.* Sometimes emphasizing the manner in which insurance companies operate, the practices commonly followed in the solicitation of insurance applications, and the reliance which insureds usually place in the insurance agent, and declaring that a contrary rule would permit mischief and fraud, the courts adhering to that doctrine have generally ruled, expressly or in effect, that the agent was acting as the agent of the insurer in the transaction, that the insurer was therefore chargeable with his acts and conduct, and that as a consequence it was estopped to assert, or deemed to have waived, the falsity of such answers. A number of courts so holding have likewise stressed and relied in part on the ground that the agent's knowledge was imputed to the insurer, and that in the eyes of the law it therefore issued the policy knowing the true facts. Also, some courts have ruled that the principle was applicable that where one of two innocent persons must suffer by reason of the fraud or misconduct of a third person, the loss should fall upon him who made the perpetration of the wrong possible. * * * *In a number of cases the courts have declared that the doctrine holding the insurer responsible is the 'majority rule,' or that it is supported by the great weight of authority.*

"On the other hand, *in some decisions, considerably fewer in number, it has been ruled or recognized that the applicant or insured was chargeable with and responsible for such false application answers,* especially where the truth of the answers was warranted, and where the insurer's agent was a mere soliciting or similar agent.[3] * * *" [Emphasis added.] 26 A.L.R.3d 6 at 17–18.

3. In the instant case: (1) the truth of the answers was *not* warranted [as discussed earlier in this opinion, A.R.S. § 20–1109 provides that all statements in an application for insurance "shall be deemed to be representations and not warranties"]; and (2) the insurer's agent was a general agent and *not* merely a soliciting or similar agent.

After carefully reviewing the annotation from which the above summary is taken as well as other authority bearing on the issues raised, we have concluded that, under the circumstances of this case, the defendant insurance company cannot properly deny recovery under the policy.

First of all, we are of the opinion that the rule set forth in Greber v. Equitable Life Assurance Society, supra, relied on by the trial court, does not apply to the circumstances of this case. In the Greber case, there could be no finding of knowledge imputed to the insurance company, as the incorrect information was furnished by the applicant rather than the agent. In the instant case, however, the trial court found that plaintiff Smith answered the questions asked of him fully and completely and without any intent °to defraud. That knowledge of the agent is in law the knowledge of the defendant insurance company, whether or not communicated to it by its agent. Commercial Credit Co. v. Eisenhour, 28 Ariz. 112, 236 P. 126 (1925).

In this case the insured had no reason to suspect the insurance agent of dishonest or fraudulent conduct, and he had a right to expect that the company which put the agent forward would at least not be permitted to rely upon its agent's fraud so as to rescind the policy. In other words, the company will not be heard to in effect say to the insured: "You have misplaced your trust in our agent, and, while we will escape the disappointment and losses occasioned thereby, you cannot. Your assumption that we would have in our employ only such agents as are trustworthy and honest is incorrect as we must now for the first time advise you." See Griego v. New York Life Insurance Co., 44 N.M. 330, 102 P.2d 31 (1940). Protection of the insurer from its agent's fraudulent acts at the price of disaster to an applicant sanctifies and fosters over-reaching and is fundamentally unfair. The methods employed in processing applications lie substantially within the control of the insurer, and the insurer should not be shielded from its own wrong.

In the instant case the applicant gave full and truthful answers to the questions asked of him by the agent. The agent, in filling out the application, fraudulently entered incorrect answers without the fault, knowledge, or collusion of the applicant. The agent also induced the applicant to sign the application without first reading either it or the certification above his name. Under these circumstances, we hold that the defendant insurance company cannot properly deny recovery under the policy.

For the foregoing reasons, the judgment of the trial court is reversed and the cause is remanded to the trial court for a determination as to the amount to be awarded to the plaintiff.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.